**In re the PATERNITY OF Terry DAVIS, Appellant–Respondent,**

v.

**Theresa Marie Audrey TRENSEY, Appellee–Petitioner.**

No. 71A04–0610–JV–606.

Court of Appeals of Indiana.

March 8, 2007.

Christopher C. Crawford, Garcia & Crawford, LLC, Elkhart, IN, Attorney for Appellant.

## OPINION

FRIEDLANDER, Judge.

Terry Davis appeals the denial of his motion to correct error, in which he asked the trial court to reverse its ruling that he is the biological father of J.T., a minor child. He presents the following restated issues for review:

1. Did the trial court err in denying Davis's motion for continuance?

2. Did the trial court err in denying Davis's motion to correct error?

We affirm.

Sometime in late 2004 or early 2005, Theresa Trensey informed Davis that she was pregnant and that he was probably the father. The record is not entirely clear on the subject, but it would appear that at the time, Davis was married to another woman and Trensey was either engaged to or dating a man named Jermal W. The child was born on July 21, 2005. Notwithstanding Trensey's earlier representation to Davis that he was probably the father, Trensey decided the child's last name would be that of Jermal W., who executed a paternity affidavit. When later asked about the inconsistency, Trensey explained she was unsure at the time whether Davis or Jermal W. was the father.

For reasons not apparent from the record, but probably related to child support, on January 30, 2006, the St. Joseph County Prosecutor's Office (the Prosecutor's Office) filed a petition to establish paternity in Davis. Davis appeared at an April 19, 2006 hearing at which the trial court ordered Trensey, Davis, and J.T. to submit to genetic testing.[1] The test results indicated a 99.9943 percent chance that Davis is J.T.'s biological father. The court conducted a paternity hearing on June 21, 2006. At the outset of that hearing, Davis claimed he had learned the results of the genetic tests only two weeks before. According to Davis, "I just found out recently of the whole situation. I'd ask to consult with an attorney. I don't have one and I

---

1. On April 25, 2006, Jermal W. was also ordered to submit to a genetic test. It appears that he did so, or in any event was by some means excluded as possibly being J.T.'s biological father, as reflected in the following exchange at the June 21 hearing:

MS. TRENSEY: [Jermal W.] was—It was either between Terry Davis and [Jermal W.]. I put [Jermal W.'s] last name as hers and then, you know, I done the genetic testing and then found out that it wasn't.

MR. ZIMMERMAN [deputy prosecuting attorney]: [Jermal W.] was already excluded, correct?

MS. TRENSEY: Correct.

*Appellant's Appendix* at 43.

would like to reschedule this. It can be any time next week." *Transcript* at 11. The court denied Davis's request, explaining,

> You've had two months, at least, to make contact with an attorney. That's why I have not allowed a continuance of this case. You could have talked to an attorney and gotten legal advice. You've chosen, evidently, not to. Maybe you were expecting the best out of the genetic test and then suddenly they come back and show something you didn't expect to show.

*Id.* at 16. Davis responded, "Once I seen [sic] the genetic test, Your Honor, that's when—Like I said, I didn't know what was going on." *Id.* At the conclusion of the hearing, the trial court entered an order establishing that Davis is J.T.'s biological father, changing J.T.'s last name, and directing Davis to pay $32.00 per week in child support. On July 20, 2006, Davis, by counsel, filed a motion to correct error. Davis appeals the denial of that motion.

■ We note as a preliminary matter that there is no appellee's brief.

> When the appellee does not submit a brief, we apply a less stringent standard of review with respect to showings of reversible error. We may reverse if the appellant establishes prima facie error, that is, an error at first sight, on first appearance, or on the face of it. When the appellant fails to sustain that burden, we will affirm. We do not undertake the burden of developing arguments for the appellee.

*In re Paternity of B.N.C.,* 822 N.E.2d 616, 618–19 (Ind.Ct.App.2005) (quoting *Murfitt v. Murfitt,* 809 N.E.2d 332, 333 (Ind.Ct. App.2004)).

1.

■ Davis claims the trial court improperly denied his motion for continuance

of the hearing held on June 21, 2006. The decision whether to grant a request for a continuance rests within the trial court's sound discretion. *Thompson v. Thompson,* 811 N.E.2d 888 (Ind.Ct.App.2004), *trans. denied.* A court abuses its discretion in denying a motion for continuance when the moving party has shown good cause for granting the motion. *Id.*

■ Davis knew even before J.T. was born that there might be a controversy as to whether he was the father of Trensey's child. Possibility turned to reality when, on January 30, 2006, the Prosecutor's Office filed an action to establish Davis's paternity. Davis was served with a summons on February 7, but did not retain an attorney. On February 19, Davis attended a hearing in the matter. At an April 19, 2006 hearing, Davis was ordered to undergo a genetic test. Still, he did not retain an attorney. Davis admitted that, at the latest, he learned by June 7 that the genetic tests indicated he was the father. Even then, he did not retain an attorney, nor did he seek representation before attending the June 21 hearing at which paternity was established.

More than four months elapsed between his awareness of the paternity suit against him and the hearing at which he asked the court for a continuance in order to obtain counsel. Yet, his remarks when requesting a continuance reflect his awareness that it would take but a few days to obtain counsel. Under these circumstances, we agree with the trial court's observation that Davis lacked diligence in this matter and that his predicament at the June 21 hearing was of his own making. Such does not present a compelling reason to grant the request for a continuance. The trial court did not abuse its discretion in denying his motion for continuance.

### 2.

Davis contends that because Jermal W. executed a paternity affidavit, Jermal W. was required to set aside that petition within 60 days, which he did not do. Thus, according to Davis, Jermal W.'s acknowledgement of paternity remains in force. Davis also notes that in entering a paternity order against him (Davis), the trial court neglected to set aside Jermal W.'s affidavit of paternity. Davis cites this as an alternative basis for concluding that Jermal W.'s affidavit is still in effect.

■ As explained below, we conclude this action is not governed by the paternity affidavit statute, i.e., Ind.Code Ann. § 16–37–2–2.1 (West, PREMISE through 2006 Second Regular Session), but instead by Ind.Code Ann. ch. 31–14–4 et seq. (West, PREMISE through 2006 Second Regular Session) and Ind.Code Ann. § 31–14–6–1 (West, PREMISE through 2006 Second Regular Session). We further conclude that, pursuant to the latter statutes, the trial court correctly ordered the genetic test and entered a finding of paternity against Davis based upon the results thereof.

According to I.C. § 31–14–2–1 (West, PREMISE through 2006 Second Regular Session), "[a] man's paternity may only be established: (1) in an action under [I.C. art. 31–14]; or (2) by executing a paternity affidavit in accordance with I.C. § 16–37–2–2.1." J.T.'s paternity was initially established via a paternity affidavit under (2) above, but the order herein appealed changed the initial status and established paternity in Davis under (1) above, or I.C. § 31–14–4 et seq. Yet, Davis focuses the bulk of his argument upon the requirements for setting aside a paternity affidavit under I.C. § 16–37–2–2.1. That statute provides that a mother and a man who "reasonably appears to be the child's biological father", *Id.* at subsection (b)(1)(B),

may execute an affidavit shortly after the birth of a child born out of wedlock that acknowledges the man's paternity. Executing such an affidavit "conclusively establishes the man as the legal father of the child." *See* I.C. § 16–37–2–2.1(m). One of the questions presented in this appeal is, may that presumption of paternity be rebutted? The answer clearly is yes. *See, e.g.,* I.C. § 31–14–11–1 (West, PREMISE through 2006 Second Regular Session) (providing that in paternity proceedings where a paternity affidavit has been submitted, an order establishing paternity and child support may be entered without the presentation of any additional evidence *unless the putative father sets forth evidence rebutting his paternity* ). The methods available to negate the affidavit vary depending upon the identity of the party that wishes to rebut paternity. Davis explains why rebuttal under I.C. § 16–37–2–2.1 was not properly accomplished in the instant case. He is correct. We reiterate, however, that provision sets out the rebuttal procedures applicable for "a man who is a party to a paternity affidavit under" I.C. § 16–37–2–2.1(h)—in this case, Jermal W. But, Jermal W. did not initiate this paternity action. Therefore, I.C. § 16–37–2–2.1 does not apply. Instead, the Prosecutor's Office filed this paternity action on behalf of the State of Indiana. Paternity actions brought by such entities are governed by a different statute.

I.C. § 31–14–4–1 (West, PREMISE through 2006 Second Regular Session) provides that a county prosecutor's office may file a paternity action either under subsection (a) on behalf of certain enumerated parties, including the child's mother, or under subsection (b) on its own motion. Further, I.C. § 31–14–6–1 authorizes "*any party* " in such a paternity action to petition for genetic testing, and also compels trial courts to grant those motions. [Em-

phasis supplied.] Thus, the Prosecutor's Office was authorized to file the instant paternity action and to request genetic tests, and the trial court was obliged to grant that request. The resulting tests excluded Jermal W. as the father and established that Davis is the biological father. *See* I.C. § 31–14–7–1(3) (West, PREMISE through 2006 Second Regular Session) ("[a] man is presumed to be a child's biological father if ... the man undergoes a genetic test that indicates with at least a ninety-nine percent (99%) probability that the man is the child's biological father").

We do not intend by the foregoing discussion to beg the question. We understand that Davis's argument is that the existence of the paternity affidavit forecloses *any* attack upon the presumption of paternity created thereby except through the procedure set out in I.C. § 16–37–2–2.1. We hold today that such is not the case.

 Davis urges us to declare, in effect, that I.C. § 16–37–2–2.1 "trumps" I.C. ch. 31–14–4. We disagree with the underlying premise, i.e., that those two statutes are in conflict. When construing statutes, our function is to determine, give effect to, and implement the legislative intent behind the enactment of the provisions. *Neal v. DeKalb County Div. of Family & Children,* 796 N.E.2d 280 (Ind. 2003). "Where two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony." *Patrick v. Miresso,* 848 N.E.2d 1083, 1086 (Ind.2006) (quoting *Quakenbush v. Lackey,* 622 N.E.2d 1284, 1290 (Ind.1993)). When they can be read in harmony with one another, we presume the legislature intended for them both to have effect. *Burd Mgmt., LLC v. State,* 831 N.E.2d 104 (Ind.2005). "[W]e recognize a strong presumption that when the legislature enacted a particular

piece of legislation, it was aware of existing statutes relating to the same subject." *Poehlman v. Feferman,* 717 N.E.2d 578, 582 (Ind.1999).

In 2006, the Indiana General Assembly enacted a minor amendment of I.C. § 31–14–4–1 by substituting "department" for "division of family and children." *See* P.L. 145–2006, Sec. 220. We presume the General Assembly was aware at the time of the existence of I.C. § 16–37–2–2.1, which it also amended in the same year. Thus, it appears the General Assembly did not perceive a conflict between those two provisions. Indeed, the language employed in the provisions does not evince any incompatibility. By its terms, I.C. § 16–37–2–2.1(h) governs actions filed by men who have executed a paternity affidavit and want to rescind it. We reiterate, that is not the situation before us. I.C. art. 31–14, on the other hand, creates restricted rights in certain parties (e.g., "[t]he mother, a man alleging to be the child's father, or the department or its agents ...", I.C. § 31–14–5–3(b) (West, PREMISE through 2006 Second Regular Session)) and an unrestricted right in other parties to initiate paternity actions. One of the parties granted an unrestricted right, i.e., a prosecutor's office, filed the instant action. We find no language in I.C. ch. 31–14–4 et seq. preventing the Prosecutor's Office from filing a paternity action in a case where a man filed a paternity affidavit more than sixty days before. Therefore, the instant paternity action was authorized under I.C. ch. 31–14–4 et seq. This conclusion is consistent with the strong public policies in favor of identifying the correct biological father and allocating the child support obligation to that person, as explained by our Supreme Court:

> [T]here is a substantial public policy in correctly identifying parents and their offspring. Proper identification of par-

ents and child should prove to be in the best interests of the child for medical or psychological reasons. It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father.

*In re S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992).

In summary, this action is not governed by I.C. § 16–37–2–2.1, and the presumption of paternity based upon Jermal W.'s paternity affidavit was properly rebutted by the action filed under I.C. § 31–14–4–1 by the Prosecutor's Office, and the resulting genetic tests. Moreover, we conclude that in entering a finding of paternity in Davis, the trial court implicitly negated Jermal W.'s paternity affidavit. The trial court is affirmed in all respects.

Judgment affirmed.

KIRSCH, C.J., and RILEY, J., concur.