**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 27 2014, 10:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRADLEY K. KAGE**
North Vernon, Indiana

ATTORNEY FOR APPELLEE:

**JASON J. PATTISON**
Jenner, Pattison, Hensley & Wynn, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF | ) | |
| A.G.P. | ) | |
| M.O., | ) | |
| | ) | |
|     Appellant-Respondent, | ) | |
| | ) | |
|       vs. | ) | No. 39A05-1311-JP-558 |
| | ) | |
| R.K.P., | ) | |
| | ) | |
|     Appellee-Petitioner. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Carl H. Taul, Special Judge
Cause No. 39C01-1202-JP-06

**May 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

M.O. ("Mother") filed in Jefferson Circuit Court a Motion to Set Aside Paternity Decree alleging that R.K.P. had perpetrated a fraud on the court, and he was not the minor child's father. Mother's motion was denied, and she filed a motion to correct error. After a hearing, the trial court denied the motion to correct error but vacated that portion of the paternity decree finding that R.K.P. was the minor child's "natural" father. Mother appeals and argues that the trial court abused its discretion when it refused to set aside the paternity decree.

We affirm.

### Facts and Procedural History

A.G.P. was born on July 4, 2011. Mother and R.K.P. executed a paternity affidavit at the hospital averring that R.K.P. was the child's father. In February 2012, Mother and R.K.P. were involved in an altercation. As a result, the Department of Child Services ("DCS") removed A.G.P. from Mother's care. DCS did not place A.G.P. with R.K.P. because he is a resident of Kentucky.

DCS then filed a petition alleging that A.G.P. was a Child in Need of Services ("CHINS"). At the initial CHINS hearing, the trial court placed A.G.P. in R.K.P.'s care. The DCS ultimately substantiated the allegation of abuse by Mother, but found the claim of abuse against R.K.P. was unsubstantiated.

When A.G.P was almost eight months old, on February 29, 2012, R.K.P. filed a petition to establish paternity to A.G.P. A hearing was held on R.K.P.'s petition and Mother testified that R.K.P. was the child's father. Mother also agreed that R.K.P. should have primary physical custody of A.G.P., while Mother was to have unsupervised

2

parenting time with A.G.P. The CHINS case was dismissed when R.K.P. was awarded custody of the child.

Then, when A.G.P was approximately 18 months old, on December 12, 2012, Mother filed a motion to set aside the paternity decree in which she alleged that R.K.P. "knows he is not the father of [A.G.P.] and a fraud has been perpetrated upon the Court." Appellant's App. p. 21. In her motion, Mother claimed that she only admitted to R.K.P.'s paternity so that the DCS would dismiss the CHINS petition. Finally, she named L.P. as A.G.P.'s biological father. Mother requested, and R.K.P. agreed to submit to DNA testing. The DNA testing established that R.K.P. is not A.G.P.'s biological father. Thereafter, Mother also filed a motion to rescind the paternity affidavit she and R.K.P. executed at A.G.P.'s birth.

A hearing was held on Mother's motions on May 17, 2013, as A.G.P.'s second birthday approached. R.K.P. denied Mother's allegation that R.K.P. knew he was not the child's biological father from the date of her birth. R.K.P. testified that he would not have taken responsibility for A.G.P. had he known she was not his biological child. However, he stated that he had bonded with A.G.P. as her father. R.K.P. requested that the court deny Mother's motion and allow him to retain custody of the child.

The trial court denied Mother's motions to set aside the paternity decree and to rescind the paternity affidavit. The court specifically found that "[t]here was no mistake, surprise or excusable neglect which would warrant setting aside the paternity affidavit or the paternity decree." Id. at 24. The court also concluded that "[t]here is no fraud, duress, misrepresentation nor misconduct of an adverse party." Id.

3

On May 31, 2013, DNA testing established that L.P. is A.G.P.'s biological father. Mother then timely filed a motion to correct error, and later filed an amended motion. Hearings were held on the motion to correct error on August 30 and September 16, 2013. During these proceedings, L.P. was permitted to intervene as the child's biological father. And R.K.P. filed a petition for third party custody of A.G.P.

On October 15, 2013, the trial court denied Mother's motion to correct error. In its order, the trial court concluded that L.P. could proceed with his petition to establish paternity to A.G.P. The court also again concluded that "the only evidence of fraud perpetrated on the court was by" Mother. Id. at 34. Finally, the court vacated the portion of the paternity decree naming R.K.P. as A.G.P.'s "natural" father, but maintained physical custody of the child with R.K.P. See Appellant's App. pp. 32-35. Mother now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Initially, we note that strong public policy favors establishing the paternity of children born out of wedlock. See Ind. Code § 31-14-1-1. We also recognize there is a substantial public policy interest in correctly identifying parents and their offspring. But there also remains great importance in the stability of legally established relationships between parents and children. See In re Paternity of S.R.I., 602 N.E.2d 1014, 1016 (Ind. 1992).

Indiana Code section 31-14-2-1 provides two exclusive methods to establish paternity of a child born out of wedlock: (1) a paternity action under Article 31-14 or (2) the execution of a paternity affidavit in accordance with Indiana Code Section 16-37-2-

4

2.1.  R.K.P. and Mother established R.K.P.'s paternity of A.G.P by executing a paternity affidavit pursuant to section 16-37-2-2.1.  The executed paternity affidavit therefore conclusively established R.K.P. as the legal father of A.G.P. "without any further proceedings by a court."  I.C. § 16-37-2-2.1(p).

Mother moved to rescind the affidavit under Indiana Code section 16-37-2-2.1(1), which permits rescission of the affidavit only when certain conditions are met.  Specifically, Indiana Code section 16-37-2-2.1(1) provides:

> A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:
> (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
> (2) at the request of a man described in subsection (k),[1] has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

"These provisions reflect the legislature's intent to provide assistance to a man who signed a paternity affidavit due to fraud, duress, or material mistake of fact."  In re Paternity of T.M., 953 N.E.2d 96, 98 (Ind. Ct. App. 2011), trans. denied.  And it is well settled that "allowing a party to challenge paternity when the party has previously acknowledged himself to be the father should only be allowed in extreme and rare instances."  In re Paternity of E.M.L.G., 863 N.E.2d 867, 870 (Ind. Ct. App. 2007).

Importantly, there is no provision in section 16-37-2-2.1 that would permit Mother to attempt to rescind the paternity affidavit.  In fact, "[a] woman who knowingly or

---

[1] Section 16-37-2-2.1(k) provides "a man who is a party to a paternity affidavit executed under this section may, within sixty (60) days of the date that a paternity affidavit is executed under this section, file an action in a court with jurisdiction over paternity to request an order for a genetic test."

intentionally falsely names a man as the child's biological father under [section 16-37-2-2.1] commits a Class A misdemeanor." I.C. § 16-37-2-2.1(i). Moreover, our court has held that "once a mother has signed a paternity affidavit, she may not use the paternity statutes to deprive the legal father of his rights, even if he is not the biological father." In re Paternity of H.H., 879 N.E.2d 1175, 1178 (Ind. Ct. App. 2008). Accordingly, the trial court properly denied Mother's motion to rescind the paternity affidavit and R.K.P. is the legal father of A.G.P.[2]

Mother also filed a Trial Rule 60(B) motion to set aside the March 22, 2012 paternity decree entered into by agreement of the parties. Mother argues that the paternity decree should be set aside "because of the fraud perpetrated upon the Court." Appellant's App. p. 21. Mother alleged that R.K.P. knew he was not A.G.P.'s biological father.

Trial Rule 60(B) provides that a court may relieve a party from judgment "for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct *of an adverse party*, . . . or (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in

---

[2] R.K.P.'s status as the child's legal father does not prevent L.P. from attempting to establish paternity to A.G.P. Although the execution of a paternity affidavit establishes a man as a child's legal father, another man is not precluded from attempting to establish paternity of the child. See In re Paternity of N.R.R.L., 846 N.E.2d 1094, 1097 (Ind. Ct. App. 2006) ("Although Rogge's execution of the paternity affidavit established him as the child's legal father, that does not preclude another man from attempting to establish paternity of the child."), trans. denied; Paternity of Davis v. Trensey, 862 N.E.2d 308, 312 (Ind. Ct. App. 2007) (holding that the presumption of paternity provided by execution of a paternity affidavit may be rebutted). Our courts have long recognized that "there is a substantial public policy in correctly identifying parents and their offspring." In re Paternity of S.R.I., 602 N.E.2d 1014, 1016 (Ind. 1992).

sub-paragraphs (1), (2), (3), and (4)."[3] (Emphasis added). The burden is on the movant to establish grounds for Rule 60(B) relief. In re Paternity of P.S.S., 934 N.E.2d 737, 740 (Ind. 2010). "A motion made under subdivision (B) of Trial Rule 60 is addressed to the 'equitable discretion' of the trial court; the grant or denial of the Trial Rule 60(B) motion will be disturbed only when that discretion has been abused." Id. at 740-41 (citation omitted). An abuse of discretion will be found only when the trial court's action is against the logic and effect of the facts before it and the inferences that may be drawn therefrom. Id. at 741. When we review the denial of a Trial Rule 60(B) motion, we will not reweigh the evidence or substitute our judgment for that of the trial court. In re Adoption of T.L.W., 835 N.E.2d 598, 600 (Ind. Ct. App. 2005).

Mother cannot take advantage of the fraud she herself perpetrated on the court to support her motion to set aside the paternity decree. See T.R. 60(B)(3) (providing that a party may be relieved from judgment for fraud of an adverse party). Therefore, she relies on her own testimony to argue that R.K.P. knew that he was not A.G.P.'s biological father when he executed the paternity affidavit and later stated in court that he was A.G.P.'s biological father.

R.K.P. denied Mother's allegations at the hearing on her motion to set aside the paternity decree. He testified that he only agreed to the paternity testing because he

---

[3] Mother filed her motion pursuant to Trial Rule 60(B)( 1), (2), (3), and (8); however, her motion does not allege "mistake, surprise, or excusable neglect" or "any ground for a motion to correct error, including without limitation newly discovered evidence[.]"

Mother also argues in her brief that the trial court's paternity decree should be set aside because it is void. A void judgment may be set aside pursuant to Trial Rule 60(B)(6). Mother's pleading does not cite to Rule 60(B)(6). In addition, Mother's argument is unavailing because, as we noted above, R.K.P. is still A.G.P.'s legal father pursuant to execution of the paternity affidavit even though the recent DNA testing has excluded him as her biological father.

believed the testing would establish that he was A.G.P.'s biological father. R.K.P. stated that he believed he was A.G.P.'s biological father until he received the DNA test results. Tr. p. 33. Discovering that he is not A.G.P.'s biological father has not changed R.K.P.'s desire to be her father and to continue to be "very much . . . involved in her life." Tr. p. 31.

After hearing the parties' testimony and argument, the trial court determined that R.K.P. did not perpetuate the fraud on the court. Appellant's App. p. 24. The court therefore denied Mother's motion to set aside the paternity decree. Mother's argument that the trial court abused its discretion in doing so is simply a request to reweigh the evidence, which our court will not do.

For all of these reasons, we affirm the trial court's denial of Mother's motion to set aside the paternity decree. Moreover, because R.K.P. is still A.G.P.'s legal father, the trial court properly allowed R.K.P. to retain physical custody of the child pending adjudication of L.P.'s petition to establish paternity and R.K.P.'s petition for third party custody.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.