

FILED

Dec 30 2019, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly S. Lytle
Banks & Brower LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
JESSICA DAVIS

Rebecca M. S. Johnson
Spitzer Herriman Stephenson
Holderead Conner & Persinger,
LLP
Marion, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Phillip Young,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Jessica Davis f/k/a Jessica Brummet,<br>*Appellee-Respondent,*<br><br>and<br><br>Dakota Faunce,<br>*Appellee-Intervenor.* | December 30, 2019<br><br>Court of Appeals Case No.<br>19A-JP-1015<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Dana J. Kenworthy, Judge<br>The Honorable Brian F. McLane, Magistrate<br><br>Trial Court Cause No.<br>27D02-1510-JP-133 |

**Bradford, Judge.**

# Case Summary

[1] We have recognized a significant public policy interest in correctly identifying parents and their offspring. In this case, Phillip Young, knowing that he was not E.Y.'s ("Child") biological father, initiated proceedings to establish himself as Child's legal father. Based on the testimony of Young and Jessica Davis ("Mother"), the juvenile court issued an order establishing paternity in Young. Genetic testing subsequently identified Dakota Faunce as Child's biological father. Given the test results, the juvenile court vacated the previous order establishing Young as Child's legal father and established Faunce as Child's father. We affirm.

# Facts and Procedural History

[2] In mid-2012, Mother engaged in sexual relationships with both Young and Faunce. Around that time, Mother became pregnant. Child was born on April 24, 2013.

[3] Young filed a petition to establish paternity of Child on October 29, 2015. During a November 13, 2015 hearing, Young and Mother indicated that Young was Child's father. Young and Mother also claimed to have executed a paternity affidavit shortly after Child's birth but neither provided a copy of the paternity affidavit to the juvenile court.

[4] On August 9, 2016, while the paternity proceedings were pending and before the juvenile court entered any order establishing Young as Child's father,

Mother filed a motion for genetic testing. Young objected to Mother's motion, claiming that Mother was not entitled to genetic testing because they had executed a paternity affidavit. Young did not support his claim by providing the juvenile court with a copy of the paternity affidavit.

[5] On September 6, 2016, Faunce filed a motion to intervene in the ongoing paternity proceedings and for genetic testing. In this motion, Faunce indicated that he "just learned about [the] possibility" that he may be the biological father of Child and sought to intervene to "protect his possible rights and responsibilities as" Child's father. Appellant's App. Vol. II p. 40. He also asked that the juvenile court "enter an Order requiring all parties to submit to genetic testing." Appellant's App. Vol. II p. 41.

[6] On October 26, 2016, the juvenile court issued an order granting Faunce's request for genetic testing. On or about November 28, 2016, more than one year after Young filed his petition to establish paternity, the juvenile court issued an order granting Young's petition to establish paternity. Mother, Faunce, and Young subsequently filed a joint petition requesting that the juvenile court enter an agreed order for genetic testing. The juvenile court granted the joint petition on February 1, 2018.

[7] The results of the genetic testing were filed with the juvenile court on April 20, 2018, establishing a 99.99% probability that Faunce is Child's biological father. Given these results, on May 14, 2018, Mother filed a motion to vacate the

November 28, 2016 paternity order. Mother subsequently petitioned the court to enter an order establishing paternity in Faunce.

[8] The juvenile court held a hearing on all pending motions on September 26, 2018. During this hearing, Young, for the first time, provided the juvenile court with a copy of the paternity affidavit that he and Mother executed after Child's birth. On December 26, 2018, the juvenile court issued an order in which it found that Mother knew that Young was not Child's biological father when she and Young executed the paternity affidavit and although Mother had initially falsely informed Faunce that he was not Child's biological father, genetic testing had subsequently confirmed otherwise. The juvenile court also found that "Mother gave admittedly false testimony leading to the establishment of Young as [Child's] father. Young's testimony was doubtful, at best, leading to the establishment of him as [Child's] father." Appellant's App. Vol. II pp. 166–67. The juvenile court vacated the November 28, 2016 order establishing paternity in Young and issued an order establishing paternity in Faunce.

# Discussion and Decision

## I. Standard of Review

[9] Young appeals from the juvenile court's order granting Mother's motion to vacate the November 28, 2016 paternity order. The parties agree that Mother's motion is essentially a Trial Rule 60(b) motion for relief from judgment.

> We review the trial court's ruling on a motion for relief from judgment using an abuse of discretion standard. An abuse of discretion occurs only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and inferences drawn therefrom. Moreover, where as here, the trial court enters special findings and conclusions pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. First we determine if the evidence supports the findings, and second whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if clearly erroneous. We neither reweigh the evidence nor reassess witness credibility. Instead, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them.

*Barton v. Barton*, 47 N.E.3d 368, 373 (Ind. Ct. App. 2015) (internal citations omitted).

## II. Whether the Juvenile Court Abused its Discretion in Granting Mother's Motion to Vacate the November 28, 2016 Paternity Order

[10] "[T]here is a substantial public policy in correctly identifying parents and their offspring." *In re Paternity of S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992). "Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons." *Id.* Indiana Code Title 31, Article 14 ("Article 14") covers the establishment of paternity. "A man's paternity may only be established: (1) in an action under [Article 14]; or (2) by executing a paternity affidavit in accordance with [Indiana Code section] 16-37-2-2.1." Ind. Code § 31-14-2-1. "The general assembly favors the public policy of

establishing paternity under [Article 14] of a child born out of wedlock." Ind. Code § 31-14-1-1.

[11] Young asserts that his paternity was established pursuant to Indiana Code section 16-37-2-2.1. Contrary to this assertion, however, the record demonstrates that paternity was established pursuant to Article 14. Young initiated proceedings to establish his paternity on October 29, 2015. While it is true that Young and Mother had executed a paternity affidavit prior to initiation of the underlying proceedings, the juvenile court was not provided with a copy of the paternity affidavit until the September 26, 2018 hearing. The juvenile court, therefore, could not have based its November 28, 2016 order on the paternity affidavit as it was not part of the record before the court. Instead, the juvenile court based its order on testimony provided by Mother and Young during the November 13, 2015 hearing indicating that Young is Child's biological father. The juvenile court made this fact clear in its December 26, 2018 order, stating the following:

> The original paternity order of 11/28/2016 was based on the knowingly inaccurate testimony from the hearing on 11/13/2015 wherein both Young and Mother indicated that Young was the father of [Child]. The court finds both Young and Mother were aware that Young was probably not the father when they testified on 11/13/2015 to the contrary.

and

> The paternity affidavit was not provided to the court until after the genetic test had conclusively established that Faunce was the

biological father of [Child]. Rescission of the affidavit was not required prior to the genetic test because the paternity affidavit had not been provided to the court at the time the genetic testing order was entered. *The order on paternity was based solely on the testimony of Young and Mother at the 11/13/2015 hearing*.

Appellant's App. Vol. II pp. 165, 166 (emphasis added). Young's paternity, therefore, was established through Article 14 proceedings.

[12] Young argues that the juvenile court abused its discretion in granting Mother's motion to vacate the November 28, 2016 order establishing his paternity. We disagree. After the juvenile court entered its order establishing paternity in Young, additional evidence was brought to the court's attention that rebutted Young's claim that he is Child's father. Again, Young initiated the underlying proceedings and Faunce successfully intervened in the proceedings. The juvenile court granted a motion for genetic testing but, before testing had been completed, the court issued the November 28, 2016 order establishing paternity in Young. Mother, Faunce, and Young subsequently filed a joint petition for genetic testing. The results of the testing were filed with the juvenile court on April 20, 2018, establishing a 99.99% probability that Faunce is Child's biological father. The juvenile court subsequently heard evidence indicating that (1) although Mother and Young had executed a paternity affidavit on or about May 1, 2013, Mother knew at the time that Young was not Child's biological father and (2) Mother and Young had provided false testimony during the November 13, 2015 hearing regarding paternity. Based on this evidence, the juvenile court vacated its prior order establishing paternity in

Young. Upon review, we conclude that the juvenile court acted within its discretion in doing so.

[13] We are unpersuaded by Young's argument that neither Mother nor Faunce had standing to challenge the November 28, 2016 order because neither filed a timely petition to establish paternity pursuant to Article 14. This argument is without merit, as both Mother and Faunce were parties to the ongoing paternity proceedings initiated by Young, *i.e.*, Mother was an original party to the proceedings and Faunce successfully intervened. Given that both were parties to said proceedings, it would have been superfluous to require either Mother or Faunce to initiate separate proceedings under Article 14.

[14] Additionally, we would reach the same conclusion even if the juvenile court had based its order establishing Young's paternity on the paternity affidavit executed by Young and Mother. As Young argues, a properly executed paternity affidavit conclusively establishes paternity. *See* Ind. Code § 16-37-2-2.1(p). However, "may that presumption of paternity be rebutted? The answer clearly is yes." *Paternity of Davis v. Trensey*, 862 N.E.2d 308, 312 (Ind. Ct. App. 2007). Stated differently, execution of a paternity affidavit "does not preclude another man from attempting to establish paternity of the child." *In re Paternity of N.R.R.L.*, 846 N.E.2d 1094, 1097 (Ind. Ct. App. 2006), *trans. denied*.

[15] In this case, the presumption was sufficiently rebutted. Indiana Code section 16-37-2-2.1(l) provides that

A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:
> (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
> (2) at the request of a man [who is a party to the paternity affidavit] has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

As for subsection (1), the juvenile court found that the paternity affidavit was based upon knowingly false assertions by Mother. We have previously found similar acts of knowingly asserting paternity in a man by a mother to constitute fraud on the courts, which subsequently may rely on the knowingly false statements in making decisions relating to paternity, visitation, child support, etc. *See In re Paternity of S.C.*, 966 N.E.2d 143, 148–52 (Ind. Ct. App. 2012). As for subsection (2), during the pendency of the proceedings, Mother, Young, and Faunce filed a joint petition requesting that the juvenile court enter an agreed order for genetic testing. The juvenile court granted this petition and the results of the genetic testing established a 99.99% probability that Faunce is Child's biological father.[1] There is no suggestion in the record that Faunce and Young have identical DNA or that Child and Young share any genetic identifiers. Based on these facts, we conclude that even if the juvenile court had relied on

---

[1] The juvenile court noted in its December 26, 2018 order that Young performed at least two genetic tests, both of which indicated that he was not Child's biological father. It is unclear, however, who requested these tests.

the paternity affidavit in establishing paternity in Young, it did not abuse its discretion in vacating said order.

[16] The judgment of the juvenile court is affirmed.

Robb, J., and Altice, J., concur.