

FILED

Apr 30 2019, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donna Jameson
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Litton, | April 30, 2019 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 18A-JP-2066 |
| v. | Appeal from the Johnson Circuit Court |
| Jason Baugh, | The Honorable K. Mark Loyd, Judge |
| *Appellee-Intervenor.* | Trial Court Cause No. 41C01-1710-JP-192 |

**Tavitas, Judge.**

## Case Summary

[1]     Michael Litton ("Biological Father") appeals the trial court's denial of his petition to establish paternity. We affirm.

## Issue

Biological Father raises one issue, which we restate as whether the trial court properly dismissed Biological Father's petition to establish paternity. We affirm.

## Facts

Jessica Boyd ("Mother") was in a relationship with Jason Baugh ("Legal Father"), and they had a child in 2005. Mother and Legal Father were estranged at some point during 2008, and she had a brief relationship with Biological Father. Mother and Legal Father resumed their relationship, and Mother had another child, K.B., who was born in January 2009. Mother and Legal Father executed a paternity affidavit listing Legal Father as K.B.'s biological father shortly after K.B.'s birth. Mother's relationship with Legal Father ended sometime in 2010.

Mother married Andy Boyd ("Stepfather") in June 2010. In December 2010, Legal Father filed a petition to establish paternity regarding K.B. and his older child with Mother. The trial court issued an order establishing paternity in Legal Father with respect to K.B. and the older child. The trial court awarded Mother and Legal Father joint legal custody of the children with Mother having primary physical custody and Legal Father having parenting time pursuant to the Indiana Parenting Time Guidelines.

In April 2017, Legal Father filed a petition for modification of parenting time and a motion for rule to show cause to address parenting time issues and other

disputes between Legal Father and Mother. Mother contacted Biological Father in the spring of 2017 and asked him to take a private DNA test. DNA testing in June 2017 revealed a 99.9% probability that Biological Father is K.B.'s biological father.

[6] On October 12, 2017, Biological Father and Mother filed a joint verified petition to establish paternity under Indiana Code Section 31-14-7-1(3). At that time, Biological Father was incarcerated at the Marion County Jail. Legal Father was joined as a necessary party. Legal Father also filed a motion to intervene in the action, which the trial court granted. The trial court appointed a guardian ad litem ("GAL"). In June 2018, Biological Father and Mother filed a petition to amend the caption to file as next friends on behalf of K.B.

[7] After a hearing, the trial court entered findings of fact and conclusions of law dismissing Biological Father's and Mother's petition to establish paternity. The trial court found:

> . . . . .
>
> 27. [ ] The GAL submitted a report which was admitted into evidence. The Court finds the following points articulated by the GAL as salient to the present issues before the Court:
>
> a. [Older child] and [K.B.] are well adjusted despite the conflict between the parents;
>
> b. Biological Father was likely to only be a tangential part of [K.B.'s] life in the long run given his history;

c.      Mother was primarily responsible for the heightened hostility between she and Legal Father;

d.      [T]he GAL questioned Mother's timing in seeking out Biological Father given Legal Father's Petition for Modification of Parenting Time;

e.      [I]t is not in [K.B.'s] best interest to substitute Biological Father for Legal Father in her life and be separated from her brother [ ] during parenting time rotation with Legal Father;

f.      Biological Father has a criminal history which includes a term in the Indiana Department of Corrections for pointing a firearm, multiple citations for driving while suspended and seven (7) substance abuse related cases;

g.      Mother's choice to not only draw [Biological Father] into this situation but to tell the child about him, shows a deeply disturbing lack of perspective and principle;

h.      [K.B.] has developed a nine (9) year bond with Legal Father, spent consistent time with him, had him come to school functions and established a life with him and with her brother;

i.      [K.B.] has shared the same schedule, going between Legal Father and Mother's house her entire life; and,

j.      [W]hen asked about Biological Father, [K.B.] responded with short, curt answers about her

familiarity with him and denied much knowledge or involvement.

28. Legal Father has acted as [K.B.'s] father since birth, seeking to establish paternity and providing regular financial support. [K.B.] accepted Legal Father as her father and until recently he was the only father she had known.

29. Biological Father is a recovering opiate addict. He has only periodic, but not meaningful contact, with his other four (4) children . . . . He only pursued establishment of paternity for one (1) of those four (4) children. According to Biological Father, [K.L.] is the only child he's ordered to pay child support on, and he is more than $5,000.00 in arrears on that obligation.

30. Despite Biological Father's track record of lackluster parenting, Mother has chosen at this juncture to involve him in [K.B.'s] life, going so far as to allowing regular contact with Biological Father contrary to her daughter's best interests.

31. There is no dispute that the possibility of adoption of K.B. by Mother's current husband, should Legal Father's parental rights be terminated, has been discussed. It appears that Mother is paying Biological Father's expenses in this action.

32. Mother's timing, the nature of conversations, and the true motives behind the filing of this joint petition[] with Biological Father are transparent.

33.    Her motivations have little, if anything, to do with the child's best interest. Legal Father's request for contempt and a modification seeking more time with his children is telling. The Court finds the true motivation for the joint filing of this petition by Mother is to eliminate Legal Father from [K.B.'s] life. Mother had an opportunity to have DNA testing done at the time the Petition for Paternity was filed, but instead, she voluntarily entered into an agreement acknowledging Legal Father as [K.B.'s] biological and natural parent.

34.    Biological Father had unprotected sexual relations with Mother, learned that Mother was pregnant soon thereafter, and failed to make any further inquiries as to the biology of the child Mother carried. Biological Father did not file a petition to establish paternity within two (2) years after [K.B.] was born.

35.    Counsel for Petitioner proposed in her findings and conclusions that Mother's motivations are unknown. As stated herein, the Court disagrees.

36.    The Court does agree that Biological Father's motives are unknown. However, the Court can only conclude that he will not voluntarily assume financial responsibility for [K.B.] any more than he has for his other children. He is clueless and uninterested.

37.    Mother suggests she had suspicions from early on that [K.B.] may not be the biological child of Legal Father and, without excuse, failed to pursue legal remedies that were available to her until [K.B.] was eight (8) years of age, had bonded with Legal Father, and developed familial relationships with Legal Father's extended family.

38. Mother and Biological Father now ask this Court to enter an Order that is completely contrary to [K.B.'s] best interest, removing the only father she had ever known. The circumstances in this matter have changed dramatically with the passing of time, given the established and long-standing relationship which developed between [K.B.] and Legal Father.

39. To disestablish paternity in Legal Father is contrary to [K.B.'s] best interests and damaging and injurious to Legal Father given the close relationship he has with his daughter.

Appellant's App. Vol. II pp. 10-12.

[8] After analyzing the relevant statutes, the trial court concluded:

> There is no doubt that Legal Father is the legal father of [K.B.] Likewise, Mother and Biological Father have not alleged fraud, duress, or material mistake of fact. Further, Legal Father has not requested DNA testing. Therefore, it would appear there is no basis for rescinding the Paternity Affidavit signed by Mother and Legal Father.

*Id.* at 13. The trial court concluded that neither Mother's nor Biological Father's actions were in K.B.'s best interest. The trial court also concluded that Mother could not collaterally attack the prior paternity affidavit and prior paternity proceedings, to which she was a party. As to Biological Father, however, the trial court concluded:

> . . . . .

58. The same may not be said as it relates to the Biological Father and/or the child, however. Neither was a party to the 2011 paternity action. As a result, neither is precluded from a collateral attack on the Legal Father's paternity. *In Re Paternity of SRI*, 602 N.E.2d 1014 (Ind. 1992); *see also Poteet v. Rodgers*, 92 N.E.3d 1158 (Ind. Ct. App. 2018); and, *Davis v. Trensey*, 862 N.E.2d 308 (Ind. Ct. App. 2007).

59. The Joint Petition asserts Indiana Code 31-14-4-1(3) as its only basis for the paternity filing. Of course, other provisions of that statute may be available to the Biological Father, should he choose to pursue the same and have his day in Court. However, until those issues are appropriately framed, the Court is unable to address the merits of his request.

*Id.* at 15. The trial court then dismissed the petition to establish paternity. The trial court, however, noted that the dismissal was without prejudice as to Biological Father and/or child "to reinitiate the same on other grounds." *Id.* The trial court allowed Biological Father twenty days to amend his paternity petition. Biological Father now appeals.

# Analysis

[9] Biological Father argues that the trial court erred by dismissing his petition to establish paternity. Before addressing the merits of Biological Father's claim, we note that Legal Father did not file an appellee's brief. "When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error." *In re Paternity of S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *aff'd on reh'g*, 970 N.E.2d 248 (Ind. Ct. App. 2012), *trans. denied*. "In such cases, we may reverse if the appellant

establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it." *Id.* "Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf." *Id.*

[10] At Biological Father's request, the trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). In reviewing the findings made pursuant to Rule 52, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). On appeal, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*; Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *K.I.*, 903 N.E.2d at 457. A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id.*

[11] Biological Father argues that the trial court erred by dismissing his petition to establish paternity. Biological Father's argument requires us to interpret the relevant paternity statutes. Statutory interpretation is a question of law that we review de novo. *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015). In interpreting a statute, the first step is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. *Id.* When a statute is clear and unambiguous, we apply words and phrases in their plain, ordinary, and usual sense. *Id.* "[W]hen a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction."

*Id.* If the statute is ambiguous, our primary goal is to determine, give effect to, and implement the intent of the Legislature with well-established rules of statutory construction. *Id.* We examine the statute as a whole, reading its sections together so that no part is rendered meaningless if it can be harmonized with the remainder of the statute. *Id.* We do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *Id.*

## A. Disestablishment of Paternity

[12] We begin by noting that Legal Father established paternity through a paternity affidavit and also later filed a paternity action in which the trial court issued an order establishing paternity in Legal Father. Indiana Code Section 31-14-2-1 provides that paternity may only be established: "(1) in an action under [Indiana Article 31-14]; or (2) by executing a paternity affidavit in accordance with IC 16-37-2-2.1." "[I]f a man has executed a paternity affidavit in accordance with [Indiana Code Section 16-37-2-2.1], the executed paternity affidavit conclusively establishes the man as the legal father of a child without any further proceedings by a court." Ind. Code § 16-37-2-2.1(p).

[13] Once paternity is established, Indiana Code Section 31-14-7-3 provides: "A man is a child's legal father if the man executed a paternity affidavit in accordance with IC 16-37-2-2.1 and the paternity affidavit has not been rescinded or set aside under IC 16-37-2-2.1." The circumstances under which a paternity affidavit can be rescinded or set aside are limited. Indiana Code Section 16-37-2-2.1 provides:

(k) Notwithstanding any other law, a man who is a party to a paternity affidavit executed under this section may, within sixty (60) days of the date that a paternity affidavit is executed under this section, file an action in a court with jurisdiction over paternity to request an order for a genetic test.

(l) A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:

> (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and

> (2) at the request of a man described in subsection (k), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

* * * * *

(n) The court may not set aside the paternity affidavit unless a genetic test ordered under subsection (k) or (l) excludes the person who executed the paternity affidavit as the child's biological father.

I.C. § 16-37-2-2.1.[1]  None of these circumstances are present here.

[14]  Although Legal Father's paternity cannot be rescinded pursuant to Indiana Code Section 16-37-2-2.1, Indiana courts have held that paternity may be

---

[1] Indiana Code Section 16-37-2-2.1 has been amended since Father executed the paternity affidavit.  The relevant portions of the statute, however, remain the same except for changes to the subsection numbering.

indirectly disestablished by establishing paternity in another man. *See In re Paternity of Infant T.*, 991 N.E.2d 596, 600 (Ind. Ct. App. 2013), *trans. denied*; *In re Paternity of N.R.R.L.*, 846 N.E.2d 1094, 1097 (Ind. Ct. App. 2006) ("Although Rogge's execution of the paternity affidavit established him as the child's legal father, that does not preclude another man from attempting to establish paternity of the child."), *trans. denied*.

[15] In the context of a child born during a marriage and a biological father later seeking to establish paternity, our Supreme Court relied on public policy concerns[2] and held that:

> In many cases, the parties to the dissolution will stipulate or otherwise explicitly or implicitly agree that the child is a child of the marriage. In such cases, although the dissolution court does not identify the child's biological father, the determination is the legal equivalent of a paternity determination in the sense that the parties to the dissolution—the divorcing husband and wife—will be precluded from later challenging that determination, except in extraordinary circumstances. *See Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind. 1990) (husband entitled to relief from support judgment only in event that "the gene testing results which gave

---

[2] The Court held:

> We appreciate the Court of Appeals' concern for a man who may be deprived of parental rights that he assumed for many years and wishes to retain even though he is not the child's biological father. However, a countering important policy concern is identifying correctly parents and their offspring. "Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons. It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father." *In re S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992). In the end, such policy choices are the province of the legislature. Also, a husband who is not the biological father of his wife's child may pursue legally adopting the child, bringing such child within the statutory definition of "child."

*Russell v. Russell*, 682 N.E.2d 513, 517 n.7 (Ind. 1997).

rise to the prima facie case for relief in this situation became available independently of court action."). However, a child or a putative father is not precluded by the dissolution court's finding from filing a separate action in juvenile court to establish paternity at a later time. *See J.W.L. by J.L.M. v. A.J.P.*, 682 N.E.2d 519 (Ind. 1997) (child); *K.S. v. R.S.*, 669 N.E.2d 399 (Ind. 1996) (putative father); *In re S.R.I.*, 602 N.E.2d 1014 (Ind. 1992) (putative father).

*Russell v. Russell*, 682 N.E.2d 513, 518 (Ind. 1997); *see also K.S. v. R.S.*, 669 N.E.2d 399, 400 (Ind. 1996) (holding that a man claiming to be the biological father of a child born during the marriage of the child's mother to another man may bring a paternity action while the mother's marriage is still intact); *S.R.I.*, 602 N.E.2d at 1016 (holding that "a putative father may establish paternity without regard to the mother's marital status").[3] Given the prior opinions of

---

[3] We acknowledge and share Judge Baker's concerns expressed in his dissent in *Paternity of I.I.P. v. Rodgers*, 92 N.E.3d 1158, 1165 (Ind. Ct. App. 2018), where he stated:

The plain language of Indiana Code section 16-37-2-2.1(l) provides that where, as here, a paternity affidavit has already been executed pursuant to that section, it may not be rescinded unless the trial court:

(1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and

(2) at the request of a man described in subsection (k), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

Neither of those circumstances has occurred in this case.

The majority cites Indiana Code section 31-14-5-3 as support for its conclusion. In my view, this statute applies only if a paternity affidavit has not already been executed pursuant to Indiana Code section 16-37-2-2.1. To say that judicial action can trump a valid paternity affidavit even if the parties have not complied with Indiana Code section 16-37-2-2.1 is to render that statute meaningless, which is a result that should be avoided.

Moreover, the majority points to *In re Paternity of D.L.*, 938 N.E.2d 1221, 1225 (Ind. Ct. App. 2010), in support of its conclusion that "establishing paternity in another man effectively operates to disestablish the paternity of a man who executed a paternity affidavit." Op. para. 14. In *D.L.*, however, paternity was not first established by a paternity affidavit under Indiana Code section 16-37-2-2.1; instead, it "was established by an action commenced pursuant to Article 31-14 . . . ." 938 N.E.2d at 1225. That paternity established by Article 31-14 can be

our Supreme Court and this court, Legal Father's paternity could be indirectly disestablished by the establishment of paternity in Biological Father.

## B. Establishment of Paternity

[16] Because our courts have held that Legal Father's paternity may be disestablished by the establishment of paternity in another man, we will address whether the petition to establish paternity filed by Mother and Biological Father was proper. The paternity action filed by Mother and Biological Father must comply with the requirements of Indiana Code Article 31-14.

[17] Indiana Code Section 31-14-4-1 governs persons permitted to file a paternity action and provides:

---

disestablished by the same set of statutes is both unsurprising and irrelevant to the case before us.

Both the plain language of Indiana Code section 16-37-2-2.1 and caselaw support a conclusion that once a paternity affidavit has been executed, it may not be rescinded unless the terms of that statute are met. *See, e.g., In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (holding that "[o]nce a man executes a paternity affidavit in accordance with I.C. § 16-37-2-2.1, he 'is a child's legal father' unless the affidavit is rescinded or set aside pursuant to that same statute" and that "once a mother has signed a paternity affidavit, she may not use the paternity statutes to deprive the legal father of his rights, even if he is not the biological father"). I acknowledge that there is also caselaw supporting the opposite conclusion, but respectfully disagree with those cases given the plain language of the relevant statutes. *See Davis v. Trensey*, 862 N.E.2d 308, 312-14 (Ind. Ct. App. 2007) (holding that prosecutor had a right to file paternity action and seek a genetic test where paternity had been established in another man by affidavit in the past); *In re Paternity of N.R.R.L.*, 846 N.E.2d 1094, 1098 (Ind. Ct. App. 2006) (noting that while a man is established as legal father after executing a paternity affidavit, "that does not preclude another man from attempting to establish paternity of the child" via a paternity action).

I believe that the plain language of Indiana Code section 16-37-2-2.1 compels us to affirm, and therefore respectfully dissent.

*I.I.P.*, 92 N.E.3d 1165 (Baker, J., dissenting). We are constrained, however, to follow our Supreme Court's opinions in *Russell*, *S.R.I.*, and *K.S.* regarding whether paternity in one man can be disestablished by a finding of paternity in another man.

A paternity action may be filed by the following persons:

(1) The mother or expectant mother.

(2) A man alleging that:

    (A) he is the child's biological father; or

    (B) he is the expectant father of an unborn child.

(3) The mother and a man alleging that he is her child's biological father, filing jointly.

(4) The expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.

(5) A child.

(6) If paternity of a child has not been established, the department[4] by filing an action under this article for a child who is the subject of a child in need of services proceeding.

(7) If the paternity of a child has not been established:

    (A) the department; or

---

[4] "Department" refers to the department of child services. *See* Ind. Code § 31-9-2-38.5 and Ind. Code § 31-25-2-1.

> (B) a prosecuting attorney operating under an agreement or contract with the department described in IC 31-25-4-13.1.

[18] Mother and Biological Father's petition was filed jointly under subsection (3).[5] The trial court, however, found that:

> Mother was a party to the both the prior paternity affidavit and the prior paternity proceedings involving the Legal Father which resulted in this Court's issuance of the Paternity Order. The Paternity Order was a final appealable determination which has not been set-aside. As such, Mother may not now collaterally attack that determination by joining in the paternity proceeding with the Biological Father. *In re HH*, 879 N.E. 2d 1175 (Ind. Ct. App. 2008); *see also Tierney v. Greene (In Re A.N.S.)*, 741 N.E.2d 780 (Ind. Ct. App. 2001).

Appellant's App. Vol. II p. 15. We agree with the trial court.

[19] The doctrine of res judicata bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. *Dickson v. D'Angelo*, 749 N.E.2d 96, 99 (Ind. Ct. App. 2001). The principle behind this doctrine is the prevention of repetitive

---

[5] Mother and Biological Father filed a motion to amend the caption to file as next friends on behalf of K.B. Their motion specifically provided: "The granting of this motion will allow the Petitioner and Co-Petitioner to change the form of the caption and not the substance of their Petition to Establish Paternity." Appellant's App. Vol. II p. 22. The trial court's order notes that the magistrate approved the caption change on June 26, 2018, but the CCS does not show that the magistrate approved the motion. Regardless, Mother's and Biological Father's motion specifically provided that the substance of the petition did not change, only the caption changed. The substance of the petition provides that it is filed under Indiana Code Section 31-14-4-1(3).

litigation of the same dispute. *Id.* The following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Id.* at 100.

[20] The fourth factor requires that the parties to the subsequent action must be the same parties as, or those in privity with, those in the first action. *Id.* The term "privity" describes the relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action. *Id.* The term includes those who control an action, although not a party to it, and those whose interests are represented by a party to the action. *Id.*

[21] Mother was a party to both the paternity affidavit and the prior paternity action, which determined K.B.'s paternity. We have held that "once a mother has signed a paternity affidavit, she may not use the paternity statutes to deprive the legal father of his rights, even if he is not the biological father." *In re Paternity of H.H.*, 879 N.E.2d 1175, 1178 (Ind. Ct. App. 2008). As such, Mother may not use the paternity statutes to deprive Legal Father of his rights, and a joint petition to establish paternity under Indiana Code Section 31-14-4-1(3) was improper. The trial court properly dismissed Mother's and Biological Father's petition for paternity on this basis.

[22] Although the trial court dismissed Mother's petition with prejudice, the trial court noted that other provisions of Indiana Code Section 31-14-4-1 may be available to Biological Father and dismissed Biological Father's petition without prejudice. Biological Father was thus permitted to amend his paternity petition. *See* Ind. Trial Rule 12(B). The CCS indicates that Father has done so, and the trial court stayed the petition pending this appeal.

[23] Because these issues may arise on remand, we will mention the relevant statutory considerations. We note that only the persons listed in Indiana Code Section 31-14-4-1(2)—a man alleging that he is the child's biological father— and in Indiana Code Section 31-14-4-1(5)—the child—are possible persons permitted to file the paternity action here.[6]

### 1. Biological Father

[24] Indiana Code Section 31-14-4-1(2) allows a "man alleging that . . . he is the child's biological father" to file a paternity action. Indiana Code Section 31-14-5-3, however, governs the time for filing a paternity action and is also relevant here. It provides:

> (a) This section does not apply to an action filed by the department or its agents under section 4 of this chapter (or IC 31-6-6.1-6(c) before its repeal).

---

[6] A petition filed under Indiana Code Section 31-14-4-1(1) by Mother would be barred by res judicata, and Indiana Code Section 31-14-4-1(4), (6), and (7) do not apply here.

(b) The mother, a man alleging to be the child's father, or the department or its agents must file a paternity action not later than two (2) years after the child is born, unless:

(1) both the mother and the alleged father waive the limitation on actions and file jointly;

(2) support has been furnished by the alleged father or by a person acting on his behalf, either voluntarily or under an agreement with:

(A) the mother;

(B) a person acting on the mother's behalf; or

(C) a person acting on the child's behalf;

(3) the mother, the department, or a prosecuting attorney operating under an agreement or contract described in IC 31-25-4-13.1 files a petition after the alleged father has acknowledged in writing that he is the child's biological father;

(4) the alleged father files a petition after the mother has acknowledged in writing that he is the child's biological father;

(5) the petitioner was incompetent at the time the child was born; or

(6) a responding party cannot be served with summons during the two (2) year period.

(c) If any of the conditions described in subsection (b) exist, the paternity petition must be filed not later than two (2) years after the condition described in subsection (b) ceases to exist.

I.C. § 31-14-5-3. Consequently, a biological father is required to file a paternity action within two years after the child's birth unless one of the above statutory exceptions applies.

## 2. *Child*

[25] Indiana Code Section 31-14-4-1(5) allows a "child" to file a paternity action. Indiana Code Section 31-14-5-2 addresses a paternity petition filed by a minor and provides:

> (a) A person less than eighteen (18) years of age may file a petition if the person is competent except for the person's age. A person who is otherwise incompetent may file a petition through the person's guardian, guardian ad litem, or next friend.

> (b) Except as provided in subsection (c), a child may file a paternity petition at any time before the child reaches twenty (20) years of age.

> (c) If a child is incompetent on the child's eighteenth birthday, the child may file a petition not later than two (2) years after the child becomes competent.

### a. *Next Friend*

[26] "There is no statutory definition of 'next friend.'" *In re Paternity of S.A.M.*, 85 N.E.3d 879, 886 (Ind. Ct. App. 2017) (quoting *R.J.S. v. Stockton*, 886 N.E.2d 611, 614 (Ind. Ct. App. 2008)). Our courts, however, have held that "only

parents, guardians, guardians ad litem, and prosecutors may bring paternity actions as next friends of children." *Id.* at 887.

> As a general rule, a next friend for an infant plaintiff is required only when the infant is without a parent or general guardian, since ordinarily it is the duty of the parent or general guardian of an infant to institute and prosecute an action on behalf of the infant for the protection of his rights.

*Id.* (holding that paternal grandfather did not have standing to file as child's next friend). This court has interpreted the statute "to permit a putative father to file a paternity action as a child's next friend." *In re Paternity of K.H.*, 116 N.E.3d 504, 511 (Ind. Ct. App. 2018), *trans. denied*.

[27] We acknowledge the apparent inconsistency that a mother and biological father may not be permitted to file a paternity action in their own names but could file a paternity action as next friend of a child. We discussed a similar concern in *In re Adoption of E.L.*, 913 N.E.2d 1276 (Ind. Ct. App. 2009). There, the alleged biological father failed to timely register as a putative father. Consequently, his consent to the child's adoption was implied, and he was not entitled to establish paternity. *See* I.C. § 31-19-9-14. Moreover, his paternity petition was time-barred under Indiana Code Section 31-14-5-3. We held, however, that he could file a paternity action as the child's next friend. We noted that "our precedents indicate the fact R.J. is time-barred from petitioning in his own name does not preclude him from filing a petition as next friend on behalf of E.L." *E.L.*, 913 N.E.2d at 1282; *see also In re Matter of Paternity of P.L.M. by Mitchell*, 661 N.E.2d 898 (Ind. Ct App. 1996), *trans. denied*.

After *E.L.*, our General Assembly enacted Indiana Code Section 31-14-5-9, which provides: "A man who is barred under IC 31-19 from establishing paternity may not establish paternity by: (1) filing a paternity action as next friend of a child; or (2) requesting a prosecuting attorney to file a paternity action." Consequently, a man barred from establishing paternity under the adoption statutes may not file a paternity action as the child's next friend. This statutory change does not, however, prevent a man who is time-barred by Indiana Code Section 31-14-5-3 from filing as the child's next friend.[7] *See In re Adoption of K.G.B.*, 18 N.E.3d 292, 302-03 (Ind. Ct. App. 2014) (discussing *E.L.* and the enactment of Indiana Code Section 31-14-5-9).

### b. *Guardian Ad Litem*

A guardian ad litem is also permitted to file a paternity petition on behalf of a child. *See* I.C. § 31-14-5-2(a). The paternity statutes do not directly address whether a next friend or guardian ad litem is preferred to represent a child. We note, however, that Indiana Trial Rule 17(C) provides:

> An infant or incompetent person may sue or be sued in any action:
>
> (1) in his own name;
>
> (2) in his own name by a guardian ad litem or a next friend;

---

[7] We respectfully invite the General Assembly to address this inconsistency.

(3) in the name of his representative, if the representative is a court-appointed general guardian, committee, conservator, guardian of the estate or other like fiduciary.

The court, upon its own motion or upon the motion of any party, must notify and allow the representative named in subsection (3) of this subdivision, if he is known, to represent an infant or incompetent person, and be joined as an additional party in his representative capacity. *If an infant or incompetent person is not represented, or is not adequately represented, the court shall appoint a guardian ad litem for him.* The court may, in its discretion, appoint a guardian ad litem or an attorney for persons who are institutionalized, who are not yet born or in being, who are unknown, who are known but cannot be located, or who are in such position that they cannot procure reasonable representation. The court shall make such other orders as it deems proper for the protection of such parties or persons. Persons with claims against the estate of the ward or against the guardian of his estate as such may proceed under this rule or provisions applicable to guardianship proceedings. It shall not be necessary that the person for whom guardianship is sought shall be represented by a guardian ad litem in such proceedings. Nothing herein shall affect the right of a guardian to sue or be sued in his personal capacity.

*The court, in its discretion, may honor the infant's or incompetent's choice of next friend or guardian ad litem, but the court may deny approval or remove a person who is not qualified.* A next friend or guardian under subsection (C) of this rule may be required by the court to furnish bond or additional bond and shall be subject to the rules applicable to guardians of the estate with respect to duties, terms of the bond required, accounting, compensation and termination.

(emphasis added).

Importantly, both a person acting as a next friend and a guardian ad litem are required to act in the child's best interest. *See In re R.P.D. ex rel. Dick*, 708 N.E.2d 916, 918 (Ind. Ct. App. 1999), *trans. denied*. In *R.P.D.*, the mother filed a paternity action as the child's next friend. The mother asserted that it was in the child's best interest to determine his biological father. The guardian ad litem, however, filed a motion to dismiss, asserting that the paternity action was not in the child's best interest. We held that, "[b]ecause of this conflict, the trial court was required to determine, prior to reaching the merits, whether the paternity action was in [the child's] best interest." *Id.* "If the paternity action was not in [the child's] best interest, the trial court was required to dismiss it since neither [the mother], as next friend, nor the GAL could continue to prosecute an action on [the child's] behalf where it was contrary to his best interest." *Id.*

## Conclusion

The trial court properly dismissed Mother's and Biological Father's petition to establish paternity. We affirm.

Affirmed.

Baker, J., and May, J., concur.