


FILED
Apr 12 2024, 9:23 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Court of Appeals of Indiana

In the Matter of the Paternity of H.S.R.;

Haylee Bannon,

*Appellant-Petitioner*

v.

Dane Bateson,

*Appellee-Respondent*

---

April 12, 2024

Court of Appeals Case No.
23A-JP-2284

Appeal from the Hendricks Circuit Court

The Honorable Daniel F. Zielinski, Judge

Trial Court Cause No.
32C01-0910-JP-91

---

**Opinion by Judge Tavitas**
Judges Mathias and Weissmann concur.

**Tavitas, Judge.**

## Case Summary

[1] Haylee Bannon ("Mother") appeals the trial court's grant of summary judgment to Dane Bateson regarding Mother's petition for a child support order. Bateson argued that he was entitled to summary judgment because another man was the Child's legal father due to the other man having executed a paternity affidavit. We conclude, however, that Mother's designated evidence raised genuine issues of material fact. Accordingly, the trial court erred by granting summary judgment, and we reverse and remand for further proceedings.

## Issue

[2] We address one dispositive issue, which we restate as whether the trial court erred by granting summary judgment to Bateson.[1]

## Facts

[3] This cause concerns four separate cases involving H.B. ("Child"), which are relevant in determining the cause before us. The procedural history of these cases is unorthodox, but we are bound by the decisions in the various trial courts that were not challenged on appeal.

---

[1] Mother also argues that the trial court abused its discretion by striking the exhibits attached to her motion to correct error. Given our conclusion that the trial court erred by granting summary judgment to Bateson, we need not address Mother's argument that the trial court erred by granting Bateson's motion to strike.

Mother gave birth to the Child on March 4, 2009. Mother and Austin Stirling signed a paternity affidavit on March 6, 2009, and Child's name was listed as H.S. on the birth certificate.

On June 18, 2009, Mother filed a petition to establish paternity against Stirling in Cause No. 32C01-0906-JP-60 ("Stirling Paternity Case") in the Hendricks Circuit Court before Judge Jeffrey Boles. At Stirling's request, the trial court ordered DNA testing, which showed that Stirling is not the Child's biological father. Stirling then filed a motion to dismiss based upon the DNA test results. An entry on September 2, 2009, on the chronological case summary ("CCS") of the Stirling Paternity Case provides: "Respondent filed Motion to Dismiss based upon DNA results which show the chance of paternity is zero. Order granting Motion to Dismiss entered. Serve to all attys of record. CAUSE DISMISSED."[2]

In October 2009, in Cause No. 32C01-0910-JP-91 ("Bateson Paternity Case") in the Hendricks Circuit Court before Judge Jeffrey Boles, Mother filed a second petition to establish paternity and alleged that Bateson was the Child's biological father. Mother alleged that Bateson "has acknowledged paternity and an order establishing paternity is necessary . . . ." Appellant's App. Vol. II p. 33. Mother and Bateson submitted an Agreed Order, which was signed by both Mother and Bateson, in which Bateson acknowledged that he is the

---

[2] Pursuant to Indiana Evidence Rule 201, we take judicial notice of the CCS of the Stirling Paternity Case, Cause No. 32C01-0910-JP-91, and Cause No. 32D05-1408-MI-238.

biological father of the Child. Mother and Bateson further agreed that Bateson would not pay child support and "[i]t will be as if the parental rights of [Bateson] have been terminated." *Id.* at 50.

[7]     The trial court declined to approve the agreed order as follows:

> On 10 November, 2009, Agreed Order with case of *In Re The Marriage of Loeb vs. Huddleston*, [614 N.E.2d 954 (Ind. Ct. App. 1993)], purporting to agree that the Respondent is the minor child's biological father and should not be required to pay child and purporting to terminate parental rights in support of the agreed order submitted.
>
> The case cited does not support the Agreed Order because Indiana law provides that a parent cannot, by his own contract, relieve himself of the legal obligation to support his minor children, *Brokow vs. Brokow*, [398 N.E.2d 1385 (Ind. Ct. App. 1980)]. Nor may a custodial parent bargain away the children's right to support, *Halum vs. Halum*, [492 N.E.2d 30 (Ind. Ct. App. 1986), *trans. denied*,] and parents may not agree to deprive the children of support granted by a divorce decree and the agreement is a nullity *Holderness vs. Holderness*, [471 N.E. 2d 1157 (Ind. Ct. App. 1984)], because the Mother is the trustee of funds for the use and benefit of the child, *Brewer vs. Brewer*, [506 N.E.2d 830 (Ind. Ct. App. 1987), *trans. denied*]. The case cited in the Agreed Order does not apply and the Court declines to approve the Agreed Order because it was submitted to the Court with improper authority.

*Id.* at 34. Further pleadings were not filed in this matter until 2023.

[8]     In August 2014, Mother filed a petition to change the Child's name in Cause No. 32D05-1408-MI-238 ("Name Change Case") in the Hendricks Superior

Court 5 before Judge Stephenie LeMay-Luken. After a hearing, the trial court issued an order in October 2014. The order noted that Mother "has sworn under oath that Minor Child's father cannot be determined." *Id.* at 36. The trial court ordered that the Child's name be changed from H.S. to H.B. In June 2015, upon Mother's petition, the trial court also removed Stirling's name from the Child's birth certificate.

[9] In October 2022, Mother, as the Child's next friend, filed a verified petition for a support order in Cause No. 32D01-2210-DC-556, in the Hendricks Superior Court 1 before Judge Robert Freese. Mother alleged that Bateson was the Child's biological father and requested that a child support order be entered. Bateson filed a motion to dismiss and/or a motion for a more definite statement. Bateson argued, in part, that paternity had never been established and that the case had been misfiled as a "DC" action. In January 2023, the trial court ordered that the matter be transferred to the Bateson Paternity Case, in the Hendricks Circuit Court before Judge Daniel Zielinski.

[10] In the Bateson Paternity Case, Bateson withdrew his motion to dismiss and filed a motion for summary judgment. Bateson argued that: (1) Stirling was established as the Child's legal father when Stirling signed the paternity affidavit; (2) the paternity affidavit has never been rescinded; (3) Mother cannot disestablish paternity by removing Stirling's name from the Child's birth certificate; and (4) Mother has not served Stirling with this action. Bateson contended that "Mother's claim to establish paternity herein . . . fail[s] since

paternity has already been established and not subsequently rescinded." Appellant's App. Vol. II p. 46.

[11] In support of his motion for summary judgment, Bateson designated: (1) Stirling's paternity affidavit; (2) the Child's first birth certificate; (3) the petition to establish paternity in the Bateson Paternity Case; (4) the trial court's order denying the agreed order in the Bateson Paternity Case; (5) the CCS of the Name Change Case; (6) the order regarding the change of name in the Name Change Case; (7) the petition to remove Stirling's name from the Child's birth certificate in the Name Change Case; (8) the order removing Stirling's name from the Child's birth certificate in the Name Change Case; (9) the second birth certificate; (10) the Indiana Department of Health Putative Father Registry Affidavit; and (11) Mother's responses to Bateson's requests for admission.

[12] In response, Mother designated the following: (1) a Waiver of Service of Process signed by Bateson acknowledging that he received a copy of the petition for establishment of paternity filed in October 2009; (2) the Agreed Order signed by the parties wherein Bateson acknowledged that he is the Child's biological father; and (3) Mother's affidavit. In the affidavit, Mother stated that Bateson submitted to a home paternity test in August 2009, which demonstrated a 99.9% probability that Bateson is the Child's biological father. Mother attached the test results to her affidavit. Mother also asked that the trial court take judicial notice of the Stirling Paternity Case, which according to Mother "was dismissed because Austin Stirling was determined not to be the father of the child in question herein consistent with [the] paternity test making

the majority of the argument postulated by the Respondent herein and his counsel inconsequential and irrelevant." *Id.* at 48. Mother, thus, argued that genuine issues of material fact existed.

[13] At a hearing on the motion for summary judgment, Mother argued that the judicial determination in the Stirling Paternity Case that Stirling is not the Child's father "trumps" the paternity affidavit. Tr. Vol. III p. 10. The trial court granted Bateson's motion for summary judgment as follows:

> [T]he court reviewed [Bateson]'s Motion and Brief in Support of Motion for Summary Judgment. The court considered [Mother]'s Response in Opposition to Motion for Summary Judgment, which contained no supporting materials. [Mother] requests that the court take judicial notice of [the Stirling Paternity Case]. Neither the court nor the court staff were able to locate [the Stirling Paternity Case].
>
> The court finds that there are no substantial issues of material fact, and now finds as a matter of law that [Bateson]'s Petition for Summary Judgment should be GRANTED.

Appellant's App. Vol. II p. 14.

[14] Mother filed a motion to correct error and attached certain pleadings from the Stirling Paternity Case as Exhibits 1, 2, 3, and 4. Mother argued that the "paternity affidavit was abrogated" in the Stirling Paternity Case, and neither Mother nor Stirling appealed the dismissal of the Stirling Paternity Case. *Id.* at 59. Bateson filed a motion to strike Exhibits 1, 2, 3, and 4 from Mother's motion to correct error because the exhibits were not designated in response to

the motion for summary judgment. The trial court granted Bateson's motion to strike Exhibits 1, 2, 3, and 4. The trial court also denied Mother's motion to correct error. Mother now appeals.

## Discussion and Decision

[15] Mother appeals the trial court's grant of summary judgment to Bateson and the denial of her motion to correct error. "When this Court reviews a grant or denial of a motion for summary judgment, we 'stand in the shoes of the trial court.'" *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020) (quoting *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 452 (Ind. 2019)). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Murray*, 128 N.E.3d at 452; *see also* Ind. Trial Rule 56(C).

[16] The party moving for summary judgment bears the burden of making a prima facie showing that there is no issue of material fact and that it is entitled to judgment as a matter of law. *Burton*, 140 N.E.3d at 851. The burden then shifts to the non-moving party to show the existence of a genuine issue. *Id.* On appellate review, we resolve "[a]ny doubt as to any facts or inferences to be drawn therefrom . . . in favor of the non-moving party." *Id.*

[17] We review the trial court's ruling on a motion for summary judgment de novo, and we take "care to ensure that no party is denied his day in court." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013). "We limit our review to the

materials designated at the trial level." *Gunderson v. State, Ind. Dep't of Nat. Res.*, 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied*.

[18] In his motion for summary judgment, Bateson's sole argument was that, because the Stirling paternity affidavit was not rescinded, Stirling remains the legal father and Mother cannot establish that Bateson is now the legal father.[3] Mother designated several documents, including her affidavit regarding private DNA testing indicating Bateson is the Child's biological father, and requested that the trial court take judicial notice of the Stirling Paternity Case. Mother argued that another trial court determined that Stirling was not the Child's legal father. The trial court, however, stated in its order that Mother's response to the motion for summary judgment "contained no supporting materials" and that it could not locate the file for the Stirling Paternity Case. Appellant's App. Vol. II p. 14. The trial court, thus, found no genuine issues of material fact. We conclude, however, that genuine issues of material fact do exist, and the trial court erred by granting summary judgment to Bateson.

[19] Our Supreme Court has held that "there is a substantial public policy in correctly identifying parents and their offspring." *In re Paternity of S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992). "Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological

---

[3] Bateson's argument below ignored the Stirling Paternity Case and the dismissal of that action. The motion further improperly asserted that the trial court "disposed of" the Bateson Paternity Case in 2009. Appellant's App. Vol. II p. 41. The trial court merely denied the parties' proposed Agreed Order in 2009.

reasons." *Id.* Further, "[t]he general assembly favors the public policy of establishing paternity under [Article 14] of a child born out of wedlock." Ind. Code § 31-14-1-1. The goal of the paternity statutes "is to promote the welfare of the child." *Drake v. McKinney*, 717 N.E.2d 1229, 1231 (Ind. Ct. App. 1999).

[20] Bateson argues that Stirling is the Child's legal father, and thus, Bateson was entitled to summary judgment on the issue of paternity. Accordingly, we begin by addressing the impact of the Stirling paternity affidavit here. In general, "[a] man's paternity may only be established: (1) in an action under [Indiana Code Article 31-14]; or (2) by executing a paternity affidavit in accordance with IC 16-37-2-2.1." Ind. Code § 31-14-2-1. Once established, the circumstances under which paternity may be disestablished are limited.[4] *See Litton v. Baugh*, 122 N.E.3d 1034, 1039 (Ind. Ct. App. 2019).

[21] Mother and Stirling executed the paternity affidavit on March 6, 2009, and Mother filed a paternity action against Stirling in the Stirling Paternity Case. Indiana Code Section 31-14-7-3 provides: "A man is a child's legal father if the

---

[4] Although not applicable here because Bateson is not seeking to establish paternity, we note that:

Indiana courts have held paternity may be indirectly disestablished by establishing paternity in another man who is determined to be the biological father based on genetic testing. *See Litton v. Baugh*, 122 N.E.3d 1034, 1040 (Ind. Ct. App. 2019); *In re Paternity of I.I.P.*, 92 N.E.3d 1158, 1162-63 (Ind. Ct. App. 2018); *In re Paternity of Infant T.*, 991 N.E.2d 596, 600 (Ind. Ct. App. 2013), *trans. denied*; *In re Paternity of N.R.R.L.*, 846 N.E.2d 1094, 1097 (Ind. Ct. App. 2006) ("Although Rogge's execution of the paternity affidavit established him as the child's legal father, that does not preclude another man from attempting to establish paternity of the child."), *trans. denied*. Indiana Code section 31-14-4-1 sets forth who can file a paternity action, including a man alleging to be a child's biological father.

*In re Adoption of R.A.K.R.*, 174 N.E.3d 1116, 1120-21 (Ind. Ct. App. 2021), *trans. denied*.

man executed a paternity affidavit in accordance with IC 16-37-2-2.1 and the paternity affidavit has not been rescinded or set aside under IC 16-37-2-2.1." Because Stirling executed a paternity affidavit, he was, at least for a time, the Child's legal father. Further, at the time of the Child's birth and the Stirling paternity action, Indiana Code Section 16-37-2-2.1 provided in relevant part:

> (h) Notwithstanding any other law, a man who is a party to a paternity affidavit executed under this section may, within sixty (60) days of the date that a paternity affidavit is executed under this section, file an action in a court with jurisdiction over paternity to request an order for a genetic test.

> (i) A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:

>> (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and

>> (2) at the request of a man described in subsection (h), has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.

> * * * * *

> (k) The court may not set aside the paternity affidavit unless a genetic test ordered under subsection (h) or (i) excludes the person who executed the paternity affidavit as the child's biological father.

> * * * * *

(m) Except as provided in this section, if a man has executed a paternity affidavit in accordance with this section, the executed paternity affidavit conclusively establishes the man as the legal father of a child without any further proceedings by a court.

[22] Bateson argues that Stirling's paternity affidavit was never rescinded or set aside. In her designation of evidence, Mother asked the trial court to take judicial notice of the records in the Stirling Paternity Case. Such judicial notice in a summary judgment proceeding is permissible pursuant to Indiana Trial Rule 56(C), which provides: "At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, **matters of judicial notice**, and any other matters on which it relies for purposes of the motion." Under Indiana Evidence Rule 201(a)(2)(C), the trial court may take judicial notice of "records of a court of this state."[5] Even if the trial court was unable to locate the file for the Stirling

---

[5] Indiana Evidence Rule 201 also provides:

(c) Taking Notice. The court:

(1) may take judicial notice on its own; or

(2) **must take judicial notice if a party requests it and the court is supplied with the necessary information**.

(d) Timing. The court may take judicial notice at any stage of the proceeding.

(e) Opportunity to Be Heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

(emphasis added). Thus, better practice would be for the party requesting judicial notice to supply the court with the necessary information. Here, however, the CCS was readily available, and we may take judicial notice of it on appeal.

Paternity Case, the chronological case summary ("CCS") was still available.[6] *See, e.g.*, *Kindred v. Ind. Dep't of Child Servs.*, 136 N.E.3d 284, 288 n.1 (Ind. Ct. App. 2019) (taking judicial notice of chronological case summaries and filings in two causes), *trans. denied*. Accordingly, the trial court should have taken judicial notice of the CCS in the Stirling Paternity Case.

[23] The CCS demonstrates that Mother's paternity action against Stirling was dismissed because DNA tests showed that Stirling is not the Child's biological father. We acknowledge that Mother, not Stirling, filed the action and that the action was filed more than sixty days after the paternity affidavit was executed. *See* Ind. Code § 16-37-2-2.1. The trial court, however, ordered genetic testing at Stirling's request. Stirling was then excluded as the biological father of the Child, and the trial court dismissed Mother's paternity action.

[24] Neither Mother nor Stirling appealed this decision. In fact, Mother later filed proceedings in the Name Change Case to change the Child's last name and remove Stirling from the Child's birth certificate. It is unclear why, according to Bateson, the paternity affidavit has not been rescinded in the Indiana Department of Health records. Regardless, however, it is apparent that the

---

[6] On appeal, Bateson argues that Mother failed to properly designate specific documents in the Stirling Paternity Case. Bateson, however, failed to raise this issue below. In support of this argument, Bateson cites to a portion of the transcript that does not clearly raise this issue. *See* Tr. Vol. III p. 11. This portion of the transcript seems to argue that the "order" was not designated because the trial court was not provided with the order. Bateson then discusses the agreed order in the Bateson Paternity Case, not the Stirling Paternity Case. The argument below was not cogent, and moreover, "[i]ssues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived." *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind. Ct. App. 2004). Accordingly, this argument is waived.

issue of Stirling's non-paternity of the Child was settled in the Stirling Paternity Case. Bateson has cited no authority that would allow him, a third party, to challenge the dismissal of the Stirling Paternity Case at this late date.

[25] Bateson's sole argument in his motion for summary judgment and Appellee's Brief was that Stirling remained the Child's legal father, which precludes establishing Bateson as the Child's legal father. Mother, however, designated evidence to dispute Bateson's argument. In addition to requesting the trial court to take judicial notice of the Stirling Paternity Case, which showed that the paternity action against Stirling was dismissed after DNA tests showed that he was not the Child's biological father, Mother designated the Agreed Order in the instant cause, in which Bateson admitted that he is the biological father of the Child, and her affidavit regarding Bateson's DNA test results.[7] Thus, we conclude that Mother's designated evidence raised a genuine issue of material fact precluding summary judgment.

[26] Under Bateson's argument, the Child would be left fatherless—the paternity action against Stirling having been dismissed and Mother and/or the Child unable to establish Bateson as the Child's legal father despite the parties' DNA

---

[7] Mother's action against Bateson was timely because it was filed "not later than two (2) years after the child is born . . . ." Ind. Code § 31-14-5-3(b). Moreover, even if we do not consider the 2009 filings, under Indiana Code Section 31-14-5-2, the Child was entitled to pursue a paternity action before reaching twenty years of age through a "guardian, guardian ad litem, or next friend." *See, e.g.*, *In re Paternity of K.L.O.*, 816 N.E.2d 906, 908 (Ind. Ct. App. 2004) ("Because [the child] was only ten years old at the time of the filing of the paternity action, [the mother] was not barred by the statute of limitations from filing a paternity petition on [the child's] behalf as her next friend."). The instant petition was filed by Mother as the Child's next friend. Accordingly, this matter is timely.

test results showing that Bateson is the biological father. The Child would be denied child support and various incidental benefits. "Our courts have held that it is contrary to public policy to simply disestablish paternity, whereby a child would be declared fatherless." *Paternity of I.I.P.*, 92 N.E.3d at 1162. Accordingly, we reverse the trial court's grant of summary judgment to Bateson and remand for further proceedings.

## Conclusion

We conclude that genuine issues of material fact exist, and the trial court erred by granting Bateson's motion for summary judgment. Accordingly, we reverse and remand.

Reversed and remanded.

Mathias, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

Denise F. Hayden
Lacy Law Office, LLC
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Robert E. Shive
Jennifer E. Penman
Emswiller, Williams, Noland & Clarke, LLC
Indianapolis, Indiana