

IN THE

# Court of Appeals of Indiana



FILED

May 16 2025, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Todd Rokita, in his official capacity as Indiana Attorney General; Dr. Katie Jenner, in her official capacity as Indiana Secretary of Education and Board Member of the Indiana State Board of Education; and Scott Bess, Erika Dilosa, William E. Durham, Jr., Dr. Byron Ernest, Iris Hammel, Gregory F. Gastineau, Pat Mapes, Kathleen Mote, Kristin Rentschler, and B.J. Watts, in their official capacities as Board Members of the Indiana State Board of Education,

*Appellants/Cross-Appellees-Defendants*

v.

Board of School Commissioners for the City of Indianapolis,

*Appellee/Cross-Appellant-Plaintiff*

---

May 16, 2025

Court of Appeals Case No.
23A-PL-2729

Appeal from the Marion Superior Court

The Honorable Heather A. Welch, Judge

Trial Court Cause No.
49D01-2308-PL-32783

---

**Opinion by Judge Bailey**

Chief Judge Altice and Senior Judge Crone concur.

**Bailey, Judge.**

## Case Summary

[1] The Board of School Commissioners for the City of Indianapolis ("the Board") is the governing body of Indianapolis Public Schools ("IPS"). In 2018, voters approved an eight-year operating referendum tax levy for IPS. In 2020, the Indiana General Assembly ("the General Assembly") authorized school corporations to distribute funds collected from such levies to charter schools. In 2021, the Board authorized the distribution of funds from the 2018 referendum to a network of over twenty charter schools. To date, IPS has distributed over $4,000,000 to those schools each year.

[2] In 2023, the General Assembly amended the so-called Dollar Law statutes, which require a school corporation to notify the Indiana Department of Education ("the Department") of its decision to close a school building and to make the building available for a charter school to either lease for $1 per year or purchase for $1. The 2023 amendments included an exemption to the Dollar Law. The Board took steps to sell two unused school buildings, Raymond Brandes School 65 ("Brandes 65") and Francis Bellamy School 102 ("Bellamy 102"), under the belief that the exemption applied to IPS.

[3] But Dr. Katie Jenner, the Indiana Secretary of Education ("the Secretary") and a member of the Indiana State Board of Education ("the State Board"), sent a letter to the Board asserting that IPS was subject to the Dollar Law. The Board filed a complaint against the Secretary, other members of the State Board, and Indiana Attorney General Todd Rokita, who is authorized by statute to enforce compliance with the Dollar Law (we refer to these parties collectively as "the State"). The Board sought a declaratory judgment that IPS is exempt from the Dollar Law, and it requested preliminary and permanent injunctive relief. The State also requested injunctive relief.

[4] The trial court consolidated a preliminary injunction hearing with a trial on the merits and issued a final judgment in the Board's favor in November 2023. The court determined that IPS qualified for the Dollar Law exemption, that the proposed sales of Brandes 65 and Bellamy 102 could proceed as planned, and that the State was permanently enjoined from interfering with those sales.

[5] The State filed a notice of appeal and requested a stay of the judgment pending appeal to prohibit the Board from selling any buildings. The trial court granted the State's request. The Board then signed an agreement to lease Bellamy 102 to nonprofit Eclectic Soul VOICES Corporation ("VOICES"), with an option to purchase triggered by a final, unappealable order in the Board's favor. Thereafter, in 2024, the General Assembly again amended the Dollar Law statutes to retroactively revoke the exemption in the 2023 amendments.

On appeal, the State argues that IPS is not exempt from the Dollar Law under either the 2023 or the 2024 amendments. In response, the Board argues that IPS is exempt from the Dollar Law under the 2023 amendments and that applying the 2024 amendments retroactively would violate several provisions of the Indiana Constitution. The Board also argues on cross-appeal that the trial court abused its discretion in staying its judgment.

We hold that the trial court correctly determined that IPS is exempt from the Dollar Law under the 2023 amendments. We further hold that applying the 2024 amendments retroactively would violate Article 1, Section 24 of the Indiana Constitution by substantially impairing the Board's contractual relationship with VOICES as to Bellamy 102. As for Brandes 65, however, we hold that the Board has failed to establish that applying the 2024 amendments retroactively would violate any vested right or constitutional guarantee with respect to that building. Finally, we hold that the trial court did not abuse its discretion in staying its judgment. Accordingly, we affirm in part, reverse in part, and remand with instructions for the Board to dispose of Brandes 65 in conformance with the Dollar Law.

## Facts and Procedural History

[8] The relevant facts are undisputed. IPS is a school corporation in Marion County.[1] In 2014, the General Assembly authorized IPS to establish and contract with a network of schools, including charter schools,[2] that operate independently from IPS yet within IPS facilities, allowing IPS to transfer underused or vacant buildings to innovation network schools. *See* Ind. Pub. Law 44-2014 (House Enrolled Act ("HEA") 1321) (codifying Ind. Code ch. 20-25.5). In the enabling legislation, the General Assembly found that IPS faced "challenges" due to, among other things, "decades of declining enrollment that have resulted in significantly underutilized school buildings, unsustainable operating and maintenance costs, and steep reductions in revenue[.]" Ind. Code § 20-25.5-1-1.[3]

[9] In 2018, pursuant to Indiana Code Chapter 20-46-1, the Board adopted a resolution for, and Marion County voters approved, an operating referendum tax levy for IPS in the amount of roughly $220 million over the next eight years. In 2020, the General Assembly authorized school corporations or their

---

[1] For purposes of Indiana Code Title 20, with certain exceptions not relevant here, a school corporation "means a public school corporation established by Indiana law." Ind. Code § 20-18-2-16.

[2] A charter school is "a public elementary or secondary school established under [Indiana Code Article 20-24] that: (1) is nonsectarian and nonreligious; and (2) operates under a charter." I.C. § 20-24-1-4. A charter may not be granted "to a for-profit entity." I.C. § 20-24-3-2.

[3] Indiana Code Article 20-25.5 was repealed in 2015 and replaced with Article 20-25.7, which "applies to all school corporations." I.C. § 20-25.7-1-1. The Board asserts, and the State does not dispute, that IPS "is the only school corporation with innovation network schools." Appellee's Br. at 15.

governing bodies to distribute money received as part of a tax levy collected under Chapter 20-46-1 to non-virtual charter schools.[4] I.C. §§ 20-40-3-5 (2020), 20-24-7-6 (2020). In 2021, the Board approved a resolution directing funding from the 2018 referendum to be distributed to the Innovation Network Charter Schools ("INCS") in an amount up to $500 per in-district resident student until December 31, 2026. The INCS consists of over twenty charter schools. The Board asserts, and the State does not dispute, that "IPS distributes over $4,000,000 each fiscal year to the [INCS] and will continue to do so until 2026." Appellee's Br. at 16.

[10] Effective July 1, 2023, via Indiana Public Law 189-2023 (Senate Enrolled Act ("SEA") 391), the General Assembly amended what are often referred to as the Dollar Law statutes, which are codified at Indiana Code Chapter 20-26-7.1.[5] Generally speaking, the Dollar Law requires a school corporation to do the following: (1) notify the Department of its decision to close a "covered school building";[6] and (2) make the building available for a charter school to either

---

[4] A virtual charter school is a charter school "in which more than fifty percent (50%) of instruction is provided in an interactive learning environment created through technology in which students are separated from their teacher by time or space, or both." I.C. § 20-24-1-10.

[5] The original Dollar Law statute was enacted in 2011. *See* Ind. Pub. Law 91-2011 § 27 (amending I.C. § 20-26-7-1).

[6] As used in Indiana Code Chapter 20-26.7.1, "'covered school building' means a school building that is owned by a school corporation or any other entity that is related in any way to, or created by, the school corporation or the governing body, including a building corporation, and that has at any time been used for classroom instruction." I.C. § 20-26-7.1-2.1.

lease for $1 per year or purchase for $1. I.C. §§ 20-26-7.1-3, -4.[7] Indiana Code Section 20-26-7.1-9 authorizes the attorney general to enforce compliance with the Dollar Law statutes.

[11] SEA 391 amended Indiana Code Section 20-26-7.1-1 to provide in pertinent part that the Dollar Law does not apply to "[a] school corporation that distributes money that is received as part of a tax levy collected under IC 20-46-1 … to an applicable charter school."[8] With respect to referendum tax levies, SEA 391 established a new procedure for distributing revenue "received from a resolution that is approved by the governing body" of school corporations located in Lake, Marion, St. Joseph, and Vanderburgh Counties "to impose a referendum levy … **after** May 10, 2023[.]" I.C. § 20-46-1-21(a) (2023) (emphasis added). Instead of a school corporation distributing revenue directly to charter schools, as IPS has done with the revenue from its 2018 referendum, "the county auditor in which the school corporation is located shall distribute" an amount determined by a four-step formula "to each charter school,

_____

[7] If no charter school requests to lease or purchase the building within ninety days, the school corporation may sell or otherwise dispose of it in accordance with Indiana law. I.C. § 20-26-7.1-4. If a charter school purchases the building and subsequently no longer intends to use it for classroom instruction, the charter school "shall offer to transfer the … school building back to the school corporation that initially sold the … school building to the charter school …." I.C. § 20-26-7.1-5. If the school corporation declines the offer, the charter school "may sell or transfer the … school building to a third party." _Id_. If the charter school sells or transfers the building, the charter school "must transfer an amount equal to the gain in the property minus the adjusted basis (including costs of improvements to the … school building) to the school corporation that initially sold the … school building to the charter school …." _Id_.

[8] The prior version of the statute, enacted in 2019, provided, "This chapter does not apply to a school building that on July 1, 2011, is leased or loaned by the school corporation that owns the school building to another entity, if the entity is not a building corporation or other entity that is related in any way to, or created by, the school corporation or the governing body." I.C. § 20-26-7.1-1 (2019).

excluding virtual charter schools or adult high schools, that a student who resides within the attendance area of the school corporation attends if the charter school elects to participate in the referendum ….” I.C. § 20-46-1-21(b) (2023). SEA 391 also added the requirement that a resolution for a referendum for one of the four counties described in Section 20-46-1-21 “that is adopted **after** May 10, 2023, shall specify that a portion of the proceeds collected from the proposed levy will be distributed to applicable charter schools in the manner described under” that section. I.C. § 20-46-1-8(b) (2023) (emphasis added).[9] Finally, Indiana Code Section 20-46-1-8.5 was amended to provide that a resolution adopted to extend a referendum levy “**after** May 10, 2023,” for Lake, Marion, St. Joseph, and Vanderburgh Counties must comport with Indiana Code Sections 20-46-1-8 and 20-46-1-21. (Emphasis added.) The General Assembly also enacted similar provisions with respect to school safety referendum tax levies under Indiana Code Chapter 20-46-9.

[12] On July 27, 2023, the Board passed a resolution declaring that Brandes 65 and Bellamy 102 are “surplus” to IPS’s “educational, operational, and administrative needs” and directing the administration to “pursue disposition by sale of the properties pursuant to I.C. [ch.] 36-1-11.” Appellants’ App. Vol. 2

---

[9] When the Board adopted its resolution for the 2018 referendum, Indiana Code Section 20-46-1-8 contained no notice requirement. The first notice requirement was enacted in 2022. Ind. Pub. Law 174-2022 § 51. In its reply brief, the State argues for the first time that the 2022 legislation, which is not explicitly retroactive, applies to the 2018 referendum. Appellants’ Reply Br. at 28. We agree with the Board that this argument is waived, and therefore we do not consider it. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (finding issue waived because it was raised for first time in reply brief). Accordingly, by separate order, we deny as moot the Board’s motion to strike the relevant portion of the State’s reply brief.

at 156.[10] The resolution stated that the Dollar Law "does not apply to a 'school corporation that distributes money that is received as part of a tax levy collected under I.C. [ch.] 20-46-1 … to an applicable charter school[.]'" *Id.*

[13] On August 15, 2023, the Secretary sent a letter to IPS's superintendent and the Board's president asserting that IPS was subject to the Dollar Law and therefore subject to the relevant notice requirements. *See* I.C. § 20-26-7.1-4(a) (2023) ("A school corporation shall notify the [Department] not later than thirty (30) days after the date the governing body elects to close a covered school building and include with the notification whether the school corporation contends that the building should or should not be made available as provided by this chapter.").

[14] On August 21, 2023, the Board filed a complaint against the State seeking a declaratory judgment that IPS is exempt from the Dollar Law, as well as a preliminary and a permanent injunction to prevent the State from enforcing the Dollar Law against IPS. The State answered and counterclaimed for a preliminary and a permanent injunction to prevent the Board from disposing of any unused school building without complying with the Dollar Law. By agreement of the parties, the trial court consolidated the preliminary injunction hearing with a trial on the merits and heard oral argument on October 18, 2023.

---

[10] Indiana Code Section 36-1-11-4 provides for an appraisal of the property and disposal by sale or public auction. Indiana Code Section 36-1-11-5.5 provides that, notwithstanding Section 4, the property may be sold or transferred "for no compensation or a nominal fee to a not-for-profit corporation created for educational or recreational purposes[.]"

[15]     On November 13, 2023, the trial court issued a twenty-page order that reads in relevant part as follows:

> 22. [I]t is clear to the Court that the Legislature is contemplating two separate tranches of agreements between school corporations and charter schools: those funded with referend[a] adopted prior to May 10, 2023, and those funded from referenda adopted after May 10, 2023. The plain language of the statutes unambiguously declares that the disbursal formulas under Ind. Code § 20-46-1-21 and Ind. Code § 20-46-9-22 only apply to those agreements funded by referenda held after May 2023.
>
> ….
>
> 24. Under this framework that was spelled out by the General Assembly, IPS's agreement with INCS would fall under the first tranche that is not subject to the new disbursal requirements since it is funded by a levy that was passed prior to May 10, 2023 and has not had to be extended since it remains funded in this manner through 2026.
>
> ….
>
> 28. [B]y the plain reading of the Levy Exemption[, i.e., Ind. Code § 20-26-7.1-1], school corporations that make distributions to at least "a" charter school from funds received as part of a referendum under Ind. Code [ch.] 20-46-1 can be relieved from the Dollar Law so long as the school corporation comports with all other applicable laws of Ind. Code [ch.] 20-46-1. Because the reporting requirements under Ind. Code § 20-46-1-21 do not apply to distributions funded by pre-May 10, 2023 referenda, the … school corporation may seek protection under the Levy Exemption if it is already distributing funds under a prior agreement without having to abide by new reporting requirements.

29. All that is to say, the Court agrees with IPS. Because it is already distributing funds to at least one (but many in reality) charter school using funds that were obtained through a referendum authorized under Ind. Code [ch.] 20-46-1 …, the Court finds that IPS is currently exempted from the Dollar Law under the Levy Exemption for as long [as] it continues its distributions under the current regime.

30. The Court notes that IPS can only seek this protection due to the unique timing of the prior referendum and its election to distribute funds to charter schools. If IPS were to extend its current deal or begin distributing funds from a referendum held after May 10, 2023, it would be subject to the reporting requirements of Ind. Code § 20-46-1-21.

….

35. The Court finds by a preponderance of the evidence that IPS's arrangement with Innovation Network Charter Schools permits IPS to be exempted from the Dollar Law under the Levy Exemption, meaning the proposed sales of the two buildings at issue can proceed as planned.

….

The Court hereby GRANTS IPS's Motion for Preliminary Injunction and DENIES the State's cross motion for same. The Court permanently enjoins the State from interfering with the proposed sales of the buildings at issue by way of the Dollar Law.

The Court finds there is no just reason for delay and expressly directs entry of final judgment in this matter.

Appellants' App. Vol. 2 at 30-34.

[16] On November 15, 2023, the State filed a notice of appeal and an emergency motion for stay pending appeal, in which it noted that on November 13, the Board had scheduled a meeting "to consider the approval of the sale of" Bellamy 102. Appellee's App. Vol. 2 at 15. The State asserted, "If permitted to move forward, the sale of this property could impede the State's ability to obtain meaningful appellate review of the Court's judgment." *Id.* at 16. On November 16, the Board filed an opposition to the State's motion, in which it asserted that the State was asking the court to preliminarily enjoin IPS, which the court had "already denied, and doing so would cause grave financial harm to IPS." *Id.* at 60.

[17] On November 17, the trial court issued an order stating that its November 13 judgment was "stayed pending resolution of the State's appeal. The parties shall maintain the status quo until any appellate decision is certified." *Id.* at 66. That same day, the Board filed a motion in which it stated that "on November 16, 2023—just last evening—IPS approved selling Bellamy 102, with a closing date of on or about November 30, 2023." *Id.* at 68 (emphasis removed). The Board requested "an emergency status conference to clarify the scope and intent of" the court's November 17 order. *Id.*

[18] On November 27, the trial court held a status conference and issued an amended order that reads in pertinent part as follows:

> 1. The Court hereby orders and clarifies its Order Granting the State Defendants' Motion [to] Stay and finds that the sale of any buildings identified in or subject to the findings of the injunction

granted in this matter shall not proceed during the pendency of the appeal which has been initiated by the State.

2. Ind. Trial Rule 62(C) governing any stay to an enforcement of any injunctive relief states, "When an appeal is taken from an interlocutory or final judgment granting, dissolving or denying an injunction… the court to which the application is made in its sound discretion may **suspend**, modify, restore, or grant **the injunction, … during the pendency of the appeal** upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." *Id.* (emphasis added).

3. In its order granting IPS's injunction, the Court found that IPS succeeded on the merits of the claim. There was no analysis of irreparable harm because the matter involved whether the action to be enjoined violated a statute, permitting *per se* injunctive relief without requiring any balancing test. In this sense, both parties met their burden to argue that [the] injunctive relief sought was to prevent conduct which would violate the Dollar Law. Because the Court found this question is one of first impression and that the State would be irreparably harmed if the sale of the buildings identified proceeded, the Court granted a stay on any sales of buildings until the appellate courts have had an opportunity to weigh in on the Court's injunction order.

4. The Court now writes to clarify the terms of its stay "it considers proper for the security of the rights of the adverse party." T.R. 62(C). The Court finds that IPS shall not sell either of the two buildings presently considered for sale identified in the injunction order while the Court's order is up on appeal. Further, the Court finds that IPS shall not sell any other buildings that would otherwise be implicated by the Dollar Law until the appeal of the Court's order is complete. The Court issues this clarification of this stay because the Court finds that the State would be unable to be made whole should the Court's order be reversed since the identified buildings would no longer be available to be offered to any interested parties under the terms of

the Dollar Law and there is no guarantee that other suitable buildings would be available. While the Court reaffirms its findings on the Injunction Order, the circumstances of this case warrant staying the sale of any buildings currently or potentially impacted by the Court's ruling on the interpretation of the Dollar Law until the appeal is complete.

Appellants' App. Vol. 3 at 171-72.

[19] On December 14, the Board filed a verified notice of intent to enter lease, in which it stated that it was "going to consider approving a 24-month lease" of Bellamy 102 to VOICES at its meeting on that date. Appellee's App. Vol. 2 at 87. The Board expressed its belief that "this complies with the Stay Order because IPS is not selling Bellamy 102 or transferring title to a third party." *Id*. at 88. The Board noted that the lease would "also provide a purchase option [for $550,000] that is triggered only once a final, unappealable order is issued affirming the Trial Court's ruling in IPS's favor." *Id*. at 87 n.4. The State acknowledges that the lease agreement was executed, Appellants' Reply Br. at 14, and the Board "understands that VOICES has moved into Bellamy 102." Appellee's Br. at 21.

[20] On March 11, 2024, the governor signed Indiana Public Law 36-2024 (SEA 270). The Board asserts, and the State does not dispute, that the lease term for Bellamy 102 "began before SEA 270 was enacted[.]" *Id*. at 45. SEA 270 amended Indiana Code Section 20-26-7.1-1 to read in pertinent part as follows:

(b) This chapter does not apply to the following:

…

   (2) A school corporation to which all of the following
   apply:

      (A) The county auditor distributes revenue after
      May 10, 2023, as required under IC 20-46-1-21 to
      each charter school described in IC 20-46-1-21(b).

      (B) If the school corporation listed in IC 20-46-9-22
      receives revenue from a school safety referendum
      tax levy under IC 20-46-9, the county auditor
      distributes revenue after May 10, 2023, as required
      under IC 20-46-9-22 to each charter school
      described in IC 20-46-9-22(b).

   The above subdivisions are intended to apply retroactively. No
   referendums or distributed revenue prior to May 10, 2023, are
   effective to provide exemption from this chapter.

   ….

   (c) In order for any payment to a charter school to qualify as
   sharing of proceeds from a referendum for purposes of exemption
   from IC 20-26-7.1, the referendum must have been passed with
   prior notice to voters of all amounts of referendum proceeds to be
   paid to charter schools. Any claim of exemption based on
   payment of proceeds from a referendum passed without such
   notice is void.

SEA 270 states that the amended statute is effective retroactive to May 4, 2023,

and that "[a]n emergency is declared for this act."

The State appeals the trial court's ruling that IPS qualifies for the Dollar Law exemption. The Board cross-appeals the trial court's stay of its judgment.

## Discussion and Decision

### The State's Appeal

The State's argument that IPS does not qualify for the Dollar Law exemption is based almost entirely on the General Assembly's 2024 amendments in SEA 270, rather than on the 2023 amendments in SEA 391 on which the trial court based its ruling. Indeed, the State gives short shrift to SEA 391, claiming only that "[t]he 2023 exemption is ambiguous[.]" Appellants' Br. at 23. We disagree.

"Statutory interpretation is a question of law that we review de novo." *Litton v. Baugh*, 122 N.E.3d 1034, 1039 (Ind. Ct. App. 2019). "In interpreting a statute, the first step is to determine whether the Legislature has spoken clearly and unambiguously on the point in question." *Id*. "[A] statute is ambiguous where it is susceptible to more than one reasonable interpretation." *Loomis v. ACE Am. Ins. Co.*, 244 N.E.3d 908, 915 (Ind. 2024). "That parties disagree about the meaning does not make a statute ambiguous." *Ehrlich v. Starke Solar, LLC*, 219 N.E.3d 749, 758 (Ind. Ct. App. 2023), *trans. denied*. "If a statute is unambiguous, we must give it its clear and plain meaning." *Id*. Statutes relating to the same general subject matter should be construed together to produce a harmonious statutory scheme. *In re Doe*, 148 N.E.3d 1147, 1150-51 (Ind. Ct. App. 2020).

The 2023 version of Indiana Code Section 20-26-7.1-1 in SEA 391 could not be more clear and unambiguous: the Dollar Law does not apply to "[a] **school corporation** that distributes money that is received as part of a tax levy collected under IC 20-46-1 … to an applicable charter school." (Emphasis added.) As stated above, the General Assembly authorized school corporations to distribute such money to non-virtual charter schools in 2020, and IPS has been distributing such money from its 2018 tax levy to multiple non-virtual charter schools each year since 2021. The provisions in SEA 391 that apply to tax levies imposed **after** May 10, 2023—such as the requirement that the **county auditor** distribute money to charter schools—clearly do not apply to IPS's 2018 tax levy. If the 2023 version of Indiana Code Section 20-26-7.1-1 was not intended to apply to IPS and any other similarly situated school corporation,[11] it would be a useless provision, and we must presume that the General Assembly "did not enact a useless provision." *Holcomb v. Bray*, 187 N.E.3d 1268, 1289 (Ind. 2022). In sum, the trial court correctly determined that IPS qualified for the Dollar Law exemption based on the law as it existed when the court issued its ruling in November 2023.

But only a few months later, via SEA 270, the General Assembly retroactively modified Indiana Code Section 20-26-7.1-1 such that it now clearly and unambiguously precludes IPS from claiming an exemption from the Dollar

---

[11] The Board asserts, and the State does not dispute, that IPS "is the only district in the State that shared referendum dollars with charter schools before May 10, 2023[.]" Appellee's Br. at 54.

Law. It is well settled that "[t]here is no general prohibition on applying retroactive laws to cases pending on appeal." *Rokita v. Tully*, 235 N.E.3d 189, 197 (Ind. Ct. App. 2024), *trans. denied*.[12] "Courts must generally honor the legislature's choice to make a law retroactive unless doing so would violate a vested right or constitutional guarantee." *Id.*

[26] The State argues that SEA 270 does not violate any vested rights or constitutional guarantees vis-à-vis the Board. The Board disagrees, arguing that SEA 270 impairs vested contract rights in violation of Article 1, Section 24 of the Indiana Constitution; that applying SEA 270 would result in an unconstitutional taking in violation of Article 1, Section 21 of the Indiana Constitution; and that SEA 270, as applied to IPS, is unconstitutional special legislation in violation of Article 4, Section 23 of the Indiana Constitution.

[27] Due to the nature of the Board's complaint and the State's counterclaim and the procedural history of this case, these issues were neither raised nor litigated below. Because the relevant facts are undisputed and the constitutionality of a statute is a pure question of law, *Horner v. Curry*, 125 N.E.3d 584, 588 (Ind. 2019), we elect to consider them here. We are mindful that "'every statute stands before us clothed with the presumption of constitutionality unless clearly

---

[12] The Board asserts that the State should be judicially estopped from relying on SEA 270. We agree with the State that it "is not estopped from asking the Court to apply legislation passed by a co-equal branch of government during the course of litigation." Appellants' Reply Br. at 11. That said, the State's assertion that SEA 270 merely "clarified" SEA 391's Dollar Law exemption is, quite frankly, unconvincing. Appellants' Br. at 16.

overcome by a contrary showing,' and it is 'the party challenging the statute's constitutionality' that bears that burden, with all doubts resolved in favor of upholding the statute." *Mellowitz v. Ball State Univ.*, 221 N.E.3d 1214, 1229 (Ind. 2023) (quoting *KS&E Sports v. Runnels*, 72 N.E.3d 892, 905-06 (Ind. 2017)).

### *Article 1, Section 24*

[28] Article 1, Section 24 of the Indiana Constitution provides in pertinent part that no "law impairing the obligation of contracts, shall ever be passed." The "underlying concern" of this provision "is that a legislature or court will render invalid the rights and obligations which the parties agreed to in their contract." *Mellowitz*, 221 N.E.3d at 1229 (quoting *Evansville-Vanderburgh Sch. Corp. v. Moll*, 344 N.E.2d 831, 841 (Ind. 1976)). Our Supreme Court has explained that "any change of the law embodied in the contract … which will substantially postpone, obstruct, or retard its enforcement, or lessen its value, whether the change relates to its validity, construction, duration, or discharge, impairs its obligation." *City of Indianapolis v. Robison*, 117 N.E. 861, 862 (Ind. 1917).

[29] As a threshold matter, the State broadly asserts that "local governmental entities like school corporations cannot raise constitutional challenges to regulatory acts by their creating State." Appellants' Br. at 21. This assertion is

inaccurate.[13] Our Supreme Court has held that local governmental entities may challenge the constitutionality of a statute if they have "a direct stake in the outcome of [the] litigation and will sustain a direct injury if the statute is upheld[.]" *City of Hammond v. Herman & Kittle Props., Inc.*, 95 N.E.3d 116, 135 (Ind. Ct. App. 2018), *summarily aff'd in pertinent part by* 119 N.E.3d 70, 77 n.4

---

[13] In a submission of additional authority, the State cites a recent opinion of this Court, *City of Bloomington v. Smith*, 252 N.E.3d 951 (Ind. Ct. App. 2025), *trans. pending*, in which the panel held that the city lacked "enforceable rights" under Article 1, Section 24 of the Indiana Constitution to challenge a statute that retroactively invalidated waivers of the right to remonstrate against future annexation that landowners had signed in exchange for the city's provision of sewage services. *Id*. at 952. We find *Smith*'s holding unpersuasive because it is based primarily on two Depression-era Indiana Supreme Court cases involving legislation that forgave private debts to public entities. *See Bolivar Twp. Bd. of Fin. v. Hawkins*, 191 N.E. 158 (Ind. 1934) (act relieving sureties of liability for loss of public funds deposited in failed banks), and *Dep't of Pub. Welfare v. Potthoff*, 44 N.E.2d 494 (Ind. 1942) (act granting repayment relief for recipients of old-age assistance from county welfare departments). The *Hawkins* court stated,

> The appellant, in the instant case, is a political subdivision of the state, and a creature of the Legislature and acts as the agent of the state. It acts pursuant to statutory authority. The real contracting party is the state, and it has been held in many cases that the state may withdraw the power to so contract, that it may release the liability created and without the consent of the agent. And by the great weight of authority this does not amount to the impairment of contracts as provided for in the federal and state Constitutions.

191 N.E. at 165. And the *Potthoff* court observed, "While the contract clause of the Constitution protects parties dealing with the state, it does not, of course, affect the validity of statutes releasing obligations due the state." 44 N.E.2d at 496.

Unlike *Hawkins* and *Potthoff*, this case involves a real estate contract with mutual obligations running between the Board and VOICES. And, significantly, those cases were decided several decades before the Indiana Supreme Court abolished sovereign immunity and the General Assembly enacted the Indiana Tort Claims Act ("ITCA") and the Home Rule Act, the stated policy of which is to grant counties, municipalities, and townships "all the powers that they need for the effective operation of government as to local affairs." I.C. § 36-1-3-2. Specifically, the Home Rule Act abrogated the rule of law that these entities have only "powers expressly granted by statute." I.C. § 36-1-3-4(a). Similar Home Rule provisions were added to Title 20 of the Indiana Code, which governs education. I.C. §§ 20-26-3-1, -3(a). These judicial and legislative developments substantially reshaped the legal relationships between and among state and local governmental entities and the public such that, contrary to what *Hawkins* suggests, the Board is not a mere "agent of the state." *See, e.g.*, I.C. §§ 34-6-2-110 (defining a school corporation board as a "political subdivision" for purposes of Title 34, which includes the ITCA), -141 (specifying that "state agency," for purposes of the ITCA, "does not include a political subdivision"). To hold that the General Assembly, absent a valid exercise of its necessary police power, may retroactively impair the obligations of political subdivisions and their contractual partners would cloud such transactions with uncertainty, making them more costly for taxpayers, and would render the protections of Article 1, Section 24 illusory. Stated differently, political subdivisions and their contractual partners should be able to rely on the bargains that they have struck.

(Ind. 2019); *see also Holcomb v. City of Bloomington*, 158 N.E.3d 1250, 1256 (Ind. 2020) (holding that city could challenge statute, which stopped proposed annexation, as unconstitutional special legislation because city had suffered an injury); *Ind. Dep't of Nat. Res. v. Newton Cnty.*, 802 N.E.2d 430, 433 (Ind. 2004) (holding that county could challenge constitutionality of Game Bird Habitat Act because it had "a legitimate interest in upholding the challenged validity of its ordinances" regulating land sales to government agencies).

[30] In this case, the Board undeniably has a direct stake in the outcome of this litigation. Moreover, the Board will undeniably sustain a direct injury if SEA 270's retroactive revocation of the 2023 Dollar Law exemption is upheld: the loss of VOICE's lease payments for and eventual purchase of Bellamy 102 for $550,000, which is $549,999 more than the Board would stand to gain by selling the building to a charter school for $1. As mentioned above, the General Assembly is on record as acknowledging that IPS has long suffered from "unsustainable operating and maintenance costs," as well as "steep reductions in revenue[.]" I.C. § 20-25.5-1-1 (2014). Losing over half a million dollars from the sale of Bellamy 102 would only exacerbate IPS's financial woes.

[31] Turning to the merits of this issue, SEA 270 does not just substantially obstruct, but effectively nullifies, the lease/sale agreement for Bellamy 102 that the Board and VOICES signed before that retroactive legislation was enacted. The State argues that the Board's contractual rights were not vested because "its authority to contract was not settled at the time it purported to enter" the contract.

Appellants' Reply Br. at 14.[14] We observe, however, that the General Assembly specifically granted the Board the authority to enter into contracts and to lease or sell real property not needed for school purposes, under certain conditions, at least as far back as 2005. *See* Ind. Code § 20-26-5-4 (2005).[15] And the State cites no pertinent authority for the proposition that those rights are contingent on the timing of litigation over the meaning of the 2023 Dollar Law exemption.[16]

[32]     Given that substantial impairment exists, we must next consider whether SEA 270 is "reasonably necessary for the protection of the health, safety, and welfare of the general public." *Clem v. Christole, Inc.*, 582 N.E.2d 780, 784 (Ind. 1991). The General Assembly may retroactively impair existing contracts only through this "'necessary' police power, which is much narrower" than the "'general' police power" by which it has "broad authority to limit **prospectively** what parties may contract for[.]" *Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc.*, 988 N.E.2d 250, 257 (Ind. 2013) (emphasis added). "Legislation [that] invade[s] freedom of contract can only be sustained … if it both relates to the claimed

---

[14] The State also asserts that "[p]arties do not have vested rights in trial court judgments subject to appeal." Appellants' Reply Br. at 16. This assertion is irrelevant, as the rights at issue with respect to Bellamy 102 are contractual and constitutional.

[15] More generally, under the Home Rule provisions of Indiana Code Chapter 20-26-3, the General Assembly has declared that "the policy of the state is to grant to each school corporation all the powers needed for the effective operation of the school corporation." I.C. § 20-26-3-1. The Dollar Law seems to run counter to this policy and disregards the significant financial investments that generations of taxpayers have made in public school infrastructure.

[16] Taken to its illogical conclusion, the State's position means that a party could be divested of any right at any time merely by the filing of a lawsuit over the interpretation of the constitutional provision, statute, regulation, contract, or judgment at issue. We cannot square this position with the concept of ordered liberty that is fundamental to our legal system.

objective and employs means which are both reasonable and reasonably appropriate to secure such objective." *Id*. (alterations in *Girl Scouts of S. Ill.*) (quoting *Clem*, 582 N.E.2d at 783). Neither SEA 270 nor the State's reply brief makes any mention of the necessary police power, let alone the claimed objective sought to be achieved by the retroactive impairment of the Board's (and VOICES') contractual rights and obligations.

[33] Based on the foregoing, we conclude that SEA 270's revocation of SEA 391's Dollar Law exemption violates Article 1, Section 24 of the Indiana Constitution with respect to the contractual relationship between the Board and VOICES regarding Bellamy 102 and is therefore void as applied to that transaction. Therefore, we affirm that portion of the trial court's judgment that enjoins the State from interfering with the sale of that building.

[34] Because no contractual relationship existed between the Board and a third party with respect to Brandes 65 when SEA 270 was enacted, the legislation did not impair any contractual obligations as to that building.[17] Consequently, we must address the Board's remaining constitutional arguments.

---

[17] Citing *City of New Haven v. Flying J., Inc.*, 912 N.E.2d 420 (Ind. Ct. App. 2009), *trans. denied*, the Board asserts that it "has vested rights in selling Brandes 65 under the [2023] Dollar Law Exemption" because it "has incurred expenses, including attorneys' fees, in its efforts to sell" that building. Appellee's Br. at 53, 52. We note that the vested rights at issue in *City of New Haven* were federal due process and property rights, which the Board has not specifically invoked here. Moreover, the Board has failed to establish that these unquantified expenses are anything more than "mere preliminary work," which does not establish a vested right. *City of New Haven*, 912 N.E.2d at 426.

## Article 1, Section 21

Article 1, Section 21 of the Indiana Constitution provides in pertinent part, "No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." In *Lake Ridge School Corporation v. Holcomb*, 198 N.E.3d 715 (Ind. Ct. App. 2022), which involved two school corporations' challenges to the Dollar Law, another panel of this Court squarely held that school corporations, as political subdivisions of the State, "may not assert takings claims against the State" under either Article 1, Section 21 or the Fifth Amendment to the United States Constitution, which are analyzed identically. *Id.* at 719, 718. The Board has failed to establish that this case was wrongly decided and that it is entitled to relief on this issue.

## Article 4, Section 23

Article 4, Section 23 of the Indiana Constitution provides that in all the cases enumerated in Article 4, Section 22 (none of which are alleged to be relevant here), "and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." These two constitutional provisions are "aimed at limiting special legislation, which is a law that 'pertains to and affects a particular case, person, place, or thing, as opposed to the general public[.]'" *City of Hammond*, 119 N.E.3d at 78 (quoting *Mun. City of S. Bend v. Kimsey*, 781 N.E.2d 683, 689 (Ind. 2003)). Special laws are sometimes necessary, so "even if a law is special, it may still be

constitutionally permissible." *Alpha Psi Chapter of Pi Kappa Phi Fraternity, Inc. v. Auditor of Monroe Cnty.*, 849 N.E.2d 1131, 1137 (Ind. 2006).

[37] The State points out that "[s]pecial legislation is unconstitutional only if the unique characteristics of the class that is the subject of the special law do not justify the differential treatment afforded to it." Appellants' Reply Br. at 25 (citing *City of Hammond,* 119 N.E.3d at 84). The State then asserts, "The Board does not engage with this analysis at all, thus waiving the issue for this Court's review." *Id.* We agree. *See Drake v. Drake*, 221 N.E.3d 734, 738-39 (Ind. Ct. App. 2023) (finding issue waived where appellant failed to present a cogent argument supported by authority as required by Ind. Appellate Rule 46).

[38] Waiver notwithstanding, the Board contends that SEA 270 is special legislation because IPS was "the only district in the State that shared referendum dollars with charter schools before May 10, 2023[.]" Appellee's Br. at 54. The flip side of this coin, of course, is that SEA 391's Dollar Law exemption could also be considered special legislation because it applied only to IPS. Because SEA 270 ensured that the exemption "would apply uniformly across the State[,]" we cannot say that it is constitutionally impermissible. *City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813, 826 (Ind. Ct. App. 2019), *trans. denied*.

[39] In sum, the Board has failed to establish that applying SEA 270 retroactively would violate a vested right or constitutional guarantee with respect to Brandes 65. Accordingly, we reverse and remand with instructions for the Board to dispose of that building in conformance with the Dollar Law.

### The Board's Cross-Appeal

[40] On cross-appeal, the Board argues that the trial court erred in staying its original judgment pending the State's appeal. Indiana Trial Rule 62(C) provides,

> **(C) Stay of Orders Relating to Injunctions, Appointment of Receivers and Orders for Specific Relief.** When an appeal is taken from an interlocutory or final judgment granting, dissolving or denying an injunction, the appointment of a receiver or, to the extent that a stay is not otherwise permitted by law upon appeal, from any judgment or order for specific relief other than the payment of money, the court to which the application is made in its sound discretion may suspend, modify, restore, or grant the injunction, the appointment of the receiver or the specific relief during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. Nothing in this rule is intended to affect the original jurisdiction of the Supreme Court or the Indiana Court of Appeals.

"[N]o bond, obligation or other security shall be required" of a governmental organization. Ind. Trial Rule 62(E). "The purpose of a stay is to preserve the status quo while an appeal is pending[.]" *Citizens Action Coal. of Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 45 N.E.3d 483, 492 (Ind. Ct. App. 2015).

[41] We review the trial court's ruling for an abuse of discretion. *See Hilliard v. Jacobs*, 927 N.E.2d 393, 403 (Ind. Ct. App. 2010) (reviewing ruling on motion to stay enforcement of judgment pursuant to Ind. Trial Rule 62(B)), *trans. denied*. "An abuse of discretion is found only when the trial court's action is clearly erroneous, against the logic and effect of the facts before it and the

inferences which may be drawn from it." *Fry v. Schroder*, 986 N.E.2d 821, 823 (Ind. Ct. App. 2013), *trans. denied*. "In reviewing discretionary motions, we will affirm the trial court's ruling if *any* evidence supports the trial court's decision or if there is any rational basis for the trial court's action." *Id*.

[42] The Board claims that the trial court's stay of its original judgment was an abuse of discretion because IPS qualified for the 2023 Dollar Law exemption. But, thanks to SEA 270, which the trial court never had an opportunity to address, this is true only with respect to Bellamy 102, and only because the Board and VOICES executed a lease/sale agreement for that building after the trial court issued its stay.[18] The Board does not challenge the trial court's findings in its amended stay order that the applicability of the 2023 Dollar Law exemption was "one of first impression" and that the State would have been "unable to be made whole" if the buildings had been sold and the court's original judgment had ultimately been reversed. Appellants' App. Vol. 3 at 172. Instead, the Board criticizes the State for "seek[ing] legislative amendments" to the 2023 exemption after the trial court issued its judgment. Appellee's Br. at 56. But that has nothing to do with whether the trial court abused its discretion

---

[18] The Board characterizes the trial court's amended stay order as a wrongful injunction against the Board and observes that, pursuant to Indiana Trial Rule 65(C), a "governmental organization shall be responsible for costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The State contends that, "[r]ather than enjoining the Board, the trial court exercised the explicit grant of authority in Trial Rule 62 to partially suspend its injunction against the State … while the State exercised its appeal rights." Appellants' Reply Br. at 30. We agree with the State, and we note that the Board was able to execute a lease/sale agreement with VOICES for Bellamy 102 despite the stay.

in staying its judgment based on the facts before it at that time.[19] We find no abuse of discretion here.

## Conclusion

[43] We hold that the trial court correctly determined that IPS was entitled to an exemption from the Dollar Law under SEA 391 and that SEA 270 unconstitutionally impairs the contractual obligations of the Board and VOICES with respect to Bellamy 102. We further hold that the Board has failed to establish that applying SEA 270 retroactively would violate any vested right or constitutional guarantee with respect to Brandes 65. Finally, we hold that the trial court did not abuse its discretion in staying its original judgment. Accordingly, we affirm in part, reverse in part, and remand with instructions for the Board to dispose of Brandes 65 in conformance with the Dollar Law.

[44] Affirmed in part, reversed in part, and remanded.

Altice, C.J., and Crone, Sr.J., concur.

---

[19] According to the Board, in January 2024, the attorney general's legislative director testified before the Senate Education and Career Development Committee that the attorney general supported SEA 270. Appellee's Br. at 21. To state the obvious, the attorney general had no control over whether the General Assembly would actually pass that legislation.

ATTORNEYS FOR APPELLANTS

Theodore E. Rokita
Indiana Attorney General

Benjamin M.L. Jones
Section Chief, Civil Appeals
Office of the Attorney General
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Bryan H. Babb
Bradley M. Dick
Jonathan L. Mayes
Dakota C. Slaughter
Bose McKinney & Evans LLP
Indianapolis, Indiana


ATTORNEYS FOR AMICI CURIAE INDIANA CHARTER SCHOOL NETWORK AND
PARENTS OF STUDENTS IN INDIANAPOLIS CHARTER SCHOOLS

Mark J. Crandley
Kian J. Hudson
Barnes & Thornburg LLP
Indianapolis, Indiana


ATTORNEY FOR AMICUS CURIAE ECLECTIC SOUL VOICES CORPORATION

Brian A. Karle
Ball Eggleston PC
Lafayette, Indiana


ATTORNEYS FOR AMICUS CURIAE CENTRAL CHRISTIAN ACADEMY, INC.

Kevin D. Koons
Harley K. Means
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana